# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
June 2, 2015 Session Heard at Nashville

## KEVIN TURNER v. STEPHANIE D. TURNER

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Fayette County**
**No. 12354      Martha Brasfield, Chancellor**

_____

**No. W2013-01833-SC-R11-CV – Filed October 21, 2015**
_____


We granted this appeal to determine whether the courts below erred in concluding that the mother must be afforded relief from a void default judgment terminating her parental rights even though she did not seek relief from the void judgment under Rule 60.02(3) of the Tennessee Rules of Civil Procedure until more than eight years after it was entered. We agree with the courts below that the default judgment is void for lack of personal jurisdiction and also conclude that the reasonable time filing requirement of Rule 60.02 does not apply to petitions seeking relief from void judgments under Rule 60.02(3). Nevertheless, we hold that relief from a void judgment should be denied if the following exceptional circumstances exist: "(1) [t]he party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and (2) [g]ranting the relief would impair another person's substantial interest of reliance on the judgment." Restatement (Second) of Judgments § 66 (1982). We hold that the record has not been sufficiently developed to determine whether exceptional circumstances exist. Accordingly, we reverse the judgments of the trial court and the Court of Appeals and remand for the trial court to determine, after a hearing, whether exceptional circumstances justify denying relief in this case.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part; Case Remanded**

CORNELIA A. CLARK, delivered the opinion of the Court, in which SHARON G. LEE, C.J., and GARY R. WADE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Harriet S. Thompson (at trial), Bolivar, Tennessee, and Thomas F. Bloom (on appeal), Nashville, Tennessee, for the appellant, Kevin Turner.

Charles W. McGhee and Leah Lloyd Hillis, Memphis, Tennessee, for the appellee, Stephanie D. Turner.

## OPINION

## I. Factual and Procedural History

### A. *Divorce Proceedings*

Kevin Turner ("Father") and Stephanie Tullous Turner ("Mother") were married in Tennessee on July 3, 1996. Two children were born of the marriage—the first on September 13, 1996, and the second on January 4, 1998. On June 7, 1999, Father filed a complaint for divorce in the Chancery Court for Fayette County alleging inappropriate marital conduct and irreconcilable differences.[1] In particular, Father alleged that Mother was addicted to drugs and had been violent toward him. Father sought custody of the children and requested that Mother pay child support and receive visitation in accordance with a plan approved by the Department of Children's Services ("DCS"). Father alleged that Mother was already subject to a DCS order giving him custody of the children and prohibiting her from being alone with them. Father also sought a restraining order to prevent Mother from "molesting or harassing him in any fashion" and "from telephoning or otherwise contacting him in any manner whatsoever, unless it pertain[ed] to the children."

On September 2, 1999, Mother, by and through counsel, filed an answer and a counter-complaint for divorce. Mother denied inappropriate marital conduct, but she agreed a divorce should be granted based on irreconcilable differences. Mother asked for custody of the children and for Father to pay child support. She requested temporary visitation and opposed having her visitation subject to a plan approved by DCS. Mother also asked the trial court to order psychological evaluations to assist it in determining which parent should be awarded custody of the children.

Following a hearing, the trial court on September 17, 1999, granted Mother's request for court-ordered psychological evaluations and directed "the parties, their spouses or significant other[s], and their minor children" to "undergo psychological evaluation, testing and counseling" within thirty days to determine "parental fitness of the parties concerning the care, custody and/or visitation of the minor children." The trial court also directed Father and Mother to "submit to weekly drug screens and provide the

---

[1] The complaint alleged that the couple had been separated since May 24, 1999. Father filed an amended complaint on August 4, 1999, but the grounds alleged for divorce remained the same, and any differences between Father's initial and amended complaints have no bearing on this appeal.

results to the other attorney." Ten days later, the trial court entered an order "upon the stipulation of consent of the parties," which provided a temporary custody and visitation arrangement. Under this arrangement, Father received temporary custody of the children and Mother received visitation on alternate weeks from Thursday afternoon until Monday morning at 8:30 a.m. The trial court directed Mother not to leave the children with others during her visitation and directed both parties not to expose the children to drug or alcohol use. Additionally, the trial court entered a restraining order "against both parties" precluding them from "harassing or attempting to harass [each] other."

On November 9, 1999, Mother filed a motion, again by and through counsel, requesting holiday visitation. After a hearing on December 10, 1999, the trial court granted Mother holiday visitation, which ended on January 3, 2000.[2]

On May 3, 2000, four months after the last day of her holiday visitation, Mother's attorney filed a motion to withdraw as counsel.[3] As grounds for the motion, Mother's attorney alleged that he had been "unable to secure response and cooperation" and had "lost contact" with Mother.

On May 19, 2000, Father filed: (1) a motion to terminate Mother's parental rights; (2) a motion to suspend her visitation; and (3) a motion to hold her in contempt. As grounds for termination, Father alleged that Mother had failed to exercise visitation with the children since returning them home from holiday visitation on January 3, 2000, and had "made no attempts or requests for visitation" since that time. As grounds for suspending her visitation, Father alleged that Mother was "again using illegal drugs" and thus was "unstable and unsuitable to be around the minor children without supervision." As grounds for contempt, Father alleged that Mother had not submitted to the court-ordered weekly drug screens since November 5, 1999.

---

[2] Mother received holiday visitation December 16-20 and December 23-27, 1999, and December 30, 1999 to January 3, 2000. However, the order formalizing the trial court's ruling was not entered until January 21, 2000. Mother testified at the March 28, 2012 hearing in the trial court that her 1999-2000 holiday visitation occurred at the home of her friend, Charlie Fosset, Sr., whose address was 380 Johnson Drive in Oakland, Tennessee. Mr. Fosset, Sr. had died before the March 28, 2012 hearing; however, his son, who had moved into Mr. Fosset, Sr.'s home after his death, testified at that hearing that the address for his father's home is actually 380 Johnson Drive, Rossville, Tennessee.

[3] Mother's attorney addressed the notice of a May 12, 2000 hearing on his motion to withdraw to Mother at 380 Johnson Drive, Rossville, Tennessee 38066—Mr. Fosset, Sr.'s home address. The record does not indicate whether the May 12, 2000 hearing on counsel's motion to withdraw actually occurred. In any event, on September 29, 2000, Mother's counsel sent a second notice of an October 19, 2000 hearing on his motion to withdraw, but this notice was addressed only to the attorneys representing Father and not to Mother.

On August 10, 2000, the trial court granted Father's motion to suspend Mother's "unsupervised visitation with the minor children . . . pending a clear drug screen" but also ordered that Mother would be allowed "to visit the minor children at the Daycare Center." The trial court did not rule on Father's motions to terminate her parental rights and to hold her in contempt.

On October 19, 2000, after a hearing, the trial court entered a final divorce decree, which: (1) granted Father "absolute and exclusive custody and control" of the minor children; (2) stated that Mother "had not visited or had any other contact with the parties['] minor children since January 3, 2000"; (3) declared that Mother would not be awarded visitation "until such time as she demonstrate[d] by clear and convincing evidence that she is no longer addicted to drugs"; (4) reserved the issue of child support; (5) divested Mother of all "right, title and interest" to the marital home, located at 65 Oak Court Cove; and (6) permanently enjoined Mother "from coming about [Father] or his residence or from harassing him in any form or manner whatsoever and from interfering with his custody of the parties['] minor children, except during such periods of visitation as may be awarded [Mother]."[4] On the same day the divorce decree was entered, the trial court also entered a separate order granting the motion to withdraw Mother's attorney had filed on May 3, 2000.[5] The trial court again did not rule on Father's May 19, 2000 motions to terminate Mother's parental rights and to hold her in contempt.

## B. *Termination of Parental Rights*

On July 16, 2001, approximately nine months after the final divorce decree was entered, Father filed another petition to terminate Mother's parental rights. Father alleged that Mother had willfully abandoned her children by failing to have any contact with them since January 3, 2000, and by failing to provide them with any financial support. See Tenn. Code Ann. § 36-1-102(1)(A)(i) (2001). Terminating Mother's parental rights was in the children's best interests, Father alleged, because Mother's drug abuse had rendered her consistently incapable either of caring for them in a safe, stable, and healthy environment or of establishing a meaningful relationship with them. Father also alleged that he had remarried on January 12, 2001, and that his new wife, the children's stepmother, was fulfilling all parental responsibilities and intended to adopt the children. In his prayer for relief, Father asked that Mother "be personally served with a

---

[4] The certificate of service of the Clerk and Master for the Chancery Court of Fayette County stated only that the final divorce decree had been served on Mother "by mailing same to her at her last known mailing address, U.S. postage prepaid." The record does not indicate the actual address to which the final decree was mailed.

[5] As previously stated, Mother's counsel provided notice of this hearing only to the attorneys representing Father and not to Mother, and the record indicates that the order granting the motion to withdraw was provided only to Father's counsel and to the attorney who had been allowed to withdraw from representing Mother.

copy" of the petition to terminate her parental rights, "in conformity with the law." In the alternative, Father asked that Mother "be served by publication." Father listed Mother's last known address as the marital home—65 Oak Court Cove. Father did not list the address to which Mother's counsel had sent the May 3, 2000 notice of hearing on his motion to withdraw, even though that address appeared in the record.

On the same day that Father filed his petition to terminate, July 16, 2001, a civil summons and copy of the petition was issued to Mother at the marital home address. On July 23, 2001, the summons was returned unserved with the process server's handwritten note, "She has moved." Two days later, on July 25, 2001, the Clerk and Master of the Chancery Court for Fayette County signed and filed a "Non-Resident Notice" (1) stating, based on the civil complaint, that Mother "is a non-resident of the State of Tennessee, and a Resident of the State of Unknown"; (2) directing Mother to file an answer by September 22, 2001, or the petition would be "taken for confessed and said cause set for hearing ex-parte"; and (3) "order[ing]" the notice "published for four consecutive weeks in a newspaper published in Somerville, Tennessee." The record contains neither a motion by Father requesting an order authorizing constructive service by publication nor an affidavit by Father or his counsel detailing the diligent inquiries that had been made to locate Mother's residence, both of which are required by statute before constructive service by publication is attempted.[6] Nevertheless, on August 30, 2001, Father filed an affidavit of the general manager of a weekly newspaper in Somerville, which stated that the notice had been published on August 1, 8, 15, and 22, 2001.

---

[6]See Tenn. R. Civ. P. 4.08 ("In cases where constructive service of process is permissible under the statutes of this state, such service shall be made in the manner prescribed by those statutes, unless otherwise expressly provided in these rules."); Tenn. Code Ann. §§ 36-1-117(m)(3) (2014) ("Any motion for an order for publication in these [termination] proceedings shall be accompanied by an affidavit of the petitioners or their legal counsel attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought."); 21-1-203(a)(5) (2009) (stating that personal service may be dispensed with "[w]hen the residence of the defendant is unknown and cannot be ascertained upon diligent inquiry"); 21-1-204(a)-(c) (2009) ("(a) In case personal service is not used, if the defendant does not cause an appearance to be entered, the clerk, as soon as the necessary affidavit is made, shall enter upon the rule docket an order requiring the defendant to appear at a certain day named in the order, being a rule day, and defend, or otherwise the bill will be taken for confessed. (b) The clerk shall forthwith cause a copy of this order to be published for four (4) consecutive weeks in the newspaper mentioned in the order or designated by the general rules of the court. (c) The order for publication in lieu of personal service may be made at any time after the filing of the bill. The order of publication should contain the names of the parties, the style of the court in which the proceedings are had and the name of the place where the court is held, without any brief or abstract of facts, unless directed by the court."). The text of the current statutes is not substantially different from the text of the statutes in effect when Father relied upon constructive service by publication to serve Mother. Thus, citations in this opinion are to the current statutes.

Mother did not file an answer to the petition; therefore, more than two months later, on December 5, 2001, Father filed a motion for default judgment. The motion was supported by an affidavit of Father's attorney, which stated that personal service upon Mother had been attempted but failed, because Mother had moved without leaving a forwarding address, and that constructive service by publication had been utilized. Father's counsel's affidavit also stated that because personal service had failed, no attempt would be made to provide Mother with notice of the motion for default judgment.

Following a December 7, 2001 hearing, the trial court entered a default judgment on December 17, 2001, terminating Mother's parental rights. The judgment provided that Mother had "no further rights, responsibilities and obligations to the minor children," "no further right to notice of proceedings for the adoption of the minor children," "no right to object to the children's adoption," and no right "to have any relationship, legal or otherwise[,] with the minor children." Additionally, the judgment stated that Father had waived "any and all child support arrearages" that Mother owed him.

### C. Petition to Set Aside Termination Order

On July 29, 2010, more than eight years after the judgment had been entered terminating her parental rights, Mother filed, through counsel, a petition seeking to set it aside as void for lack of personal jurisdiction. Mother alleged that, because Father had received the marital home in the final divorce decree, he knew she was not residing at that address when the summons was issued. Mother also alleged that Father could have located her through her friends and family, or through his own knowledge of the drug houses she frequented, had he made any effort to do so. Finally, Mother alleged that Father's attempt at constructive service by publication was ineffective because he had failed to file an affidavit detailing the diligent efforts he had made to locate her, as required by statute.

On September 1, 2010, Father filed an answer to Mother's petition, and an initial hearing was held on December 16, 2010, but the matter was not resolved. Mother obtained new counsel after this initial hearing, and on March 7, 2011, filed a memorandum of law, in which she relied upon Rules 55.02[7] and 60.02[8] of the Tennessee

---

[7] The text of Tennessee Rule of Civil Procedure 55.02 states: "For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Mother's initial motion incorrectly cited Tennessee Rule of Civil Procedure 55.01.

[8] The text of Tennessee Rule of Civil Procedure 60.02 provides in relevant part as follows:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (3) *the judgment is void* . . . . The motion shall be made within a reasonable

Rules of Civil Procedure in support of her petition. Mother also advised the trial court that, during discovery, Father had admitted to having known that Mother was not residing in the marital home when the summons was issued to that address and to having made no effort, beyond consulting with counsel, to locate Mother before having the summons issued to the marital home address. Based on these admissions, Mother argued that constructive service by publication had been ineffective to give the trial court personal jurisdiction over Mother, and as a result, the default judgment terminating her parental rights was void. Mother also argued that terminating her fundamental parental rights without providing her with notice of the petition to terminate violated her Due Process rights.

In an April 14, 2011 memorandum, Father argued that Mother's petition was barred by the one-year statute of repose applicable to judgments terminating parental rights and should be dismissed as a matter of law. See Tenn. Code Ann. § 36-1-113(q) (2014) ("[I]n no event, for any reason, shall a termination of parental rights be overturned by any court or collaterally attacked by any person or entity after one (1) year from the date of the entry of the final order of termination. This provision is intended as a statute of repose."). On May 18, 2011, Mother filed a response, arguing that the statute of repose does not apply to her petition because it challenges the default judgment as void ab initio for lack of personal jurisdiction. Alternatively, Mother argued that applying the statute of repose to bar her challenge to the void default judgment terminating her fundamental parental rights would render the statute unconstitutional. Three months later, Mother notified the Tennessee Attorney General and Reporter ("Attorney General") of her constitutional challenge to the statute of repose. [9]

On August 18, 2011, an agreed order was entered allowing the Attorney General to intervene for the limited purpose of defending the constitutionality of the statute of repose. In a brief filed January 24, 2012, the Attorney General argued that the statute of repose does not apply to void judgments. As a result, the Attorney General argued that, if

___

time, and for reasons (1) and (2) not more than a year after judgment, order or proceeding was entered or taken.

(Emphasis added.)

[9] Rule 24.04 provides:

> When the validity of a statute of this state[s] or an administrative rule or regulation of this [s]tate is drawn in question in any action to which the State or an officer or agency is not a party, the court shall require that notice be given the Attorney General, specifying the pertinent statute, rule or regulation.

Tenn. R. Civ. P. 24.04.

the default judgment terminating Mother's parental rights were determined to be void, Mother would lack standing to challenge the constitutionality of the statute of repose because it would not apply to bar her challenge.

The trial court held a second hearing on Mother's petition on March 18, 2012, at which the following facts were established as undisputed, either by reference to the record or by uncontroverted testimony or discovery admissions. Father knew Mother was not residing at the marital home when the summons was issued to that address on July 15, 2001. Father made no attempt to locate Mother before resorting to constructive service by publication, other than consulting with his attorney. Because of her relapse to drug use, Mother had not contacted Father or the children or provided the children with financial support since January 3, 2000, almost eighteen months before Father filed the petition to terminate her parental rights.

In his testimony at the hearing, Father denied having any knowledge of Mother's whereabouts or any contact information for her friends and family that would have enabled him to locate her. Father explained that he had visited Mother's family in California once in 1997, for less than two weeks, and had not recalled their names or contact information four years later when he filed the termination petition. Father was not asked, and therefore did not explain, why he had failed to attempt personal service on Mother at the address her own attorney had used when sending notice of the hearing on his motion to withdraw.

In her testimony, Mother admitted losing contact with "everybody"—including her children, Father, her siblings, and her parents—after relapsing into drug abuse in January 2000. Mother said that, from the time of her relapse until November 2004, when she entered a drug-treatment program, she "[had] stayed here and there, wherever [she] possibly could." Although Mother named three male friends with whom she had sporadically resided during this period, she conceded that she had not given their names, phone numbers, or contact information to Father. Nevertheless, Mother testified that Father could have located her at drug houses in Fayette County, which they had frequented together during their marriage, or contacted her through her family members, who had the addresses of the male friends with whom she was residing. Mother stated that Father either had contact information for her family or easily could have obtained it. She explained that, although her family members resided in California, her grandmother's California telephone number had remained the same for sixty-five years. Mother stated that Father had visited her grandmother in 1997, knew her grandmother's surname, and could have obtained her telephone number simply by calling directory assistance in California. Mother maintained that, had Father simply contacted her family, her sisters could have located her, as they did in April 2000, when they notified Mother

of her own mother's death.[10] Mother explained that her sisters reached her then by contacting Charlie Fosset, Sr., one of the male friends with whom she had sporadically resided and with whom she was residing in July 2001. Mother was not asked, and therefore did not explain, whether she had received the notice of a hearing on her attorney's motion to withdraw, which her attorney sent to Mr. Fosset, Sr.'s address on May 3, 2000.

Mother testified that she has been drug-free and "clean" since entering a drug-treatment program in November 2004. After her release from the treatment center, Mother moved to Memphis and did not return to Fayette County. Mother had been working at a barbeque restaurant in Memphis since 2005, and by the time of the 2012 hearing on her petition, Mother held a manager position at the restaurant. According to Mother, she learned her parental rights had been terminated in 2008, but waited two years to file her petition because she could not afford to hire a lawyer. Mother admitted that she had made no attempt to contact, visit, or financially support the children since her last visitation with them on January 3, 2000.

Two of Mother's sisters testified on her behalf as well.[11] Like Mother, JT testified that the California telephone number of Mother's grandmother had not changed in sixty-five years and Father easily could have obtained it from California directory assistance. JT testified that, although she would have been unable to provide Father with Mother's address, she would have given him Mr. Fosset, Sr.'s telephone number, which Mother had given her. By calling Mr. Fosset, Sr., JT testified that Father could have located Mother, as JT did in April 2000, when their mother passed away.

Another of Mother's sisters, VT, testified that Mother had no regular contact with her family from the time of her relapse in 2000 until after Mother entered the drug-treatment program in 2004. VT stated that Mother was "[w]allowing in the street," and going "from this drug house to that drug house, until that person got tired of her and kicked her out." VT explained that the family had been able to notify Mother of her own mother's death only because "this good person, Charlie [Fosset, Sr.] managed to find someone to hunt her down on the streets" and "let her know that her mother [had] passed away." VT testified that when Mother telephoned her family from Mr. Fosset, Sr.'s home, arrangements were made for VT to travel to Tennessee and escort Mother back to California for their mother's funeral. According to VT, when she and Mother boarded their flight to California, Mother was "so on drugs to where the people wanted to kick [them] off the plane." Mother returned to Tennessee by bus, and her family did not hear

---

[10] Although Mother and her sisters testified that their mother died in April 2001, the program from their mother's funeral was introduced at trial and establishes that she died on April 24, 2000.

[11] For brevity and clarity, we refer to Mother's sisters, Joyce and Veronica Tullous, by their initials.

from her again until 2004. VT acknowledged that she had moved several times since Father visited California in 1997, had been imprisoned for nine months on a probation violation, and had no telephone of any sort until 2003. Nevertheless, like her sisters, VT testified that her grandmother's California telephone number had not changed for many years and that the family would have put Father in contact with Mother had he located their grandmother's number through directory assistance and called her.

Two other witnesses, former babysitters for Mother and Father, testified that they could have located Mother had Father contacted them, but these witnesses were unable to provide any specific address or location where Mother was residing at the time Father filed the termination petition. Father admitted knowing these witnesses but testified that he had not known, and had no reason to believe, they would have had information about Mother's whereabouts.

On July 18, 2012, the trial court granted Mother's petition and set aside the default judgment terminating her parental rights.[12] The trial court first found that, because Father had known Mother was not residing at the marital residence, his attempt at personal service at that address was, at best, futile, and at worst, bad faith. The trial court also found, however, that Mother had no permanent address during the relevant time and that Father had no information about where she was staying. Nevertheless, the trial court ruled that, while Father had no obligation to search for Mother at drug houses, he was obligated to make some attempt to locate her family and through them ascertain her whereabouts. The trial court did not rule on Father's argument that Mother's petition should be dismissed as barred by the one-year statute of repose or Mother's argument that the statute of repose would be unconstitutional if applied to bar her petition.

On August 14, 2012, Father filed a notice of appeal from the trial court's ruling. The Court of Appeals thereafter dismissed the appeal without prejudice, finding that the trial court's order was not final because it had not adjudicated the issues concerning the applicability of the statute of repose. The trial court subsequently ordered Mother, Father, and the Attorney General to brief the statute of repose issues and conducted another hearing. On July 17, 2013, the trial court agreed with the Attorney General and ruled that, because the judgment terminating Mother's parental rights is void ab initio, the statute of repose does not apply to bar Mother's petition. Father filed a second notice of appeal on August 12, 2013. After granting Father's motion to consolidate the appellate records from the two appeals, the Court of Appeals, on January 17, 2014, affirmed the trial court's decision setting aside as void the default judgment terminating Mother's parental rights. Turner v. Turner, No. W2013-01833-COA-R3-CV, 2014 WL 3057320, *17 (Tenn. Ct. App. July 7, 2014). The Court of Appeals did so reluctantly and with the recognition of the "profound consequences for not only the parties, but the minor children

_____

[12] Aside from the procedural history already recited, there is no explanation in the record for the two-year delay between the date Mother filed her petition and the trial court's decision.

at issue." <u>Id.</u> at \*16. The Court of Appeals explained, however, that under the circumstances of this case, Mother's petition is not barred by the doctrine of laches. <u>Id.</u> Additionally, the Court of Appeals declined to consider whether the statute of repose bars relief because Father had failed to argue that the statute of repose "bars relief from a void judgment." <u>Id.</u> at \*15. Although the Court of Appeals' decision was unanimous, one judge wrote separately and urged this Court to grant review, should an application for permission to appeal be filed, to "reverse" the Court of Appeals' decision, and to "clarify the law." <u>Id.</u> at \*18 (Summers, Sr. J., concurring opinion).

Father filed an application for permission to appeal. Tenn. R. App. P. 11. We granted Father's application, and in addition, directed the parties to address in their briefs the following issues: "whether [Mother] was required under [Tennessee Rule of Civil Procedure] 60.02 to file her petition to set aside within a reasonable time and, if not, whether exceptional circumstances exist in this case that require a different rule." <u>Turner v. Turner</u>, No. W2013-01833-SC-R11-CV (Tenn. Nov. 20, 2014) (order granting the application and directing supplemental briefing).

## II. Standard of Review

In general, we review a trial court's ruling on a request for relief from a final judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure ("Tennessee Rule 60.02") pursuant to the abuse of discretion standard. <u>Discover Bank v. Morgan</u>, 363 S.W.3d 479, 487 (Tenn. 2012) (citing <u>Henry v. Goins</u>, 104 S.W.3d 475, 479 (Tenn. 2003)). We have not previously considered whether this standard applies to a trial court's ruling on a motion alleging that a judgment is void for lack of jurisdiction under Tennessee Rule 60.02(3). Nevertheless, we have previously held that "[w]hether a trial court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness." <u>Furlough v. Spherion Atl. Workforce, LLC</u>, 397 S.W.3d 114, 122 (Tenn. 2013) (citing <u>Word v. Metro Air Servs., Inc.</u>, 377 S.W.3d 671, 674 (Tenn. 2012)). Moreover "[a] decision regarding the exercise of personal jurisdiction over a defendant involves a question of law" to which de novo review applies, <u>Gordon v. Greenview Hosp., Inc.</u>, 300 S.W.3d 635, 645 (Tenn. 2009), and de novo review also applies when we are interpreting the Tennessee Rules of Civil Procedure, <u>Thomas v. Oldfield</u>, 279 S.W.3d 259, 261 (Tenn. 2009).

Furthermore, when interpreting our own rules of civil procedure, we consult and are guided by the interpretation that has been applied to comparable federal rules of procedure. <u>Id.</u> at 261-62; <u>see also</u> <u>Williamson Cnty. v. Twin Lawn Dev. Co.</u>, 498 S.W.2d 317, 320 (Tenn. 1973) ("[O]ur Rules having been taken from the Federal Rules of Civil Procedure, and the object of our virtual adoption of the federal rules being to have similar rules of procedure in state trial courts and federal district courts, it is proper that we look to the interpretation of the comparable Federal Rule.").

Rule 60(b)(4) of the Federal Rules of Civil Procedure ("Federal Rule 60(b)(4)") is comparable, indeed, identical to Tennessee Rule 60.02(3). Federal courts apply de novo review when considering a district court's ruling on a Federal Rule 60(b)(4) motion. See Cent. Vermont Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 189 (2d Cir. 2003) ("Almost every Circuit has adopted de novo review of [Federal] Rule 60(b)(4) motions, and we know of no Circuit that defers to the district court on a [Federal] Rule 60(b)(4) ruling." (citing Vinten v. Jeantot Marine Alliances, S.A., 191 F. Supp. 2d 642, 649-50 & nn.12-13 (D.S.C. 2002) (collecting cases)); Jackson v. FIE Corp., 302 F.3d 515, 522 (5th Cir. 2002) ("[W]e review Rule 60(b)(4) challenges [to a void judgment] de novo "because it is 'a per se abuse of discretion for a district court to deny a motion to vacate a void judgment.'" (quoting Carter v. Fenner, 136 F.3d 1000, 1005 (5th Cir. 1998)); Burke v. Smith, 252 F.3d 1260, 1263 (11th Cir. 2001) (stating that de novo review applies to a federal district court's ruling on a motion for relief from a void judgment based on Rule 60(b)(4) of the Federal Rules of Civil Procedure "'because the question of the validity of a judgment is a legal one.'" (quoting Export Group v. Reef Indus., Inc., 54 F.3d 1466, 1469 (9th Cir. 1995))). We agree with the rationale of these decisions and will apply de novo review, with no presumption of correctness, when reviewing a trial court's ruling on a Tennessee Rule 60.02(3) motion to set aside a judgment as void. Any factual findings a trial court makes shall be reviewed de novo, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

## III. Analysis

The dispositive issues in this appeal are: (1) whether the trial court and Court of Appeals erred in concluding that the order terminating Mother's parental rights is void for lack of personal jurisdiction; (2) if the order is void, is Mother automatically entitled to relief, or does Tennessee Rule 60.02(3) condition relief upon Mother having filed her motion within a reasonable time; and (3) if the reasonable time filing requirement does not apply to motions based on Tennessee Rule 60.02(3), may a court deny relief from a void judgment based on exceptional circumstances. To answer these questions, we begin with an overview of the general legal principles relevant to jurisdiction, void judgments, and constructive service by publication.

### A. Jurisdiction Generally

The lawful authority of a court to adjudicate a controversy brought before it depends upon that court having jurisdiction of the subject matter and jurisdiction of the parties. Landers v. Jones, 872 S.W.2d 674, 675 (Tenn. 1994); Kane v. Kane, 547 S.W.2d 559, 560 (Tenn. 1977); Brown v. Brown, 296 S.W. 356, 358 (Tenn. 1927). Subject matter jurisdiction refers to the power of a court to adjudicate the particular category or type of case brought before it. Estate of Brown, 402 S.W.3d 193, 198-99 (Tenn. 2013); Chapman v. DaVita, Inc., 380 S.W.3d 710, 712 (Tenn. 2012); Word, 377 S.W.3d at 674. Personal jurisdiction refers to the power of a court over the parties to the controversy to

render a binding judgment. Landers, 872 S.W.2d at 675. The concepts of subject matter jurisdiction and personal jurisdiction are fundamentally different. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-03 (1982); Landers, 872 S.W.2d at 675. Subject matter jurisdiction confines judicial power to the boundaries drawn in constitutional and statutory provisions. Ins. Corp. of Ireland, 456 U.S. at 702; Word, 377 S.W.3d at 674; Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn. 2000). As a result, "[a] party's consent, silence, waiver, entered plea, or appearance before the court, is not sufficient to confer subject matter jurisdiction." Estate of Brown, 402 S.W.3d at 198 (citing In Re Estate of Trigg, 368 S.W.3d 483, 489 (Tenn. 2012); Caton v. Pic-Walsh Freight Co., 364 S.W.2d 931, 933 (Tenn. 1963)). See also Tenn. R. Civ. P. 12.08 (stating that subject matter jurisdiction may not be waived). As a result, subject matter jurisdiction may be challenged at any time and may be raised by a court on its own motion, even if the parties have not raised the issue. Johnson v. Hopkins, 432 S.W.3d 840, 844 (Tenn. 2013).

By contrast, personal jurisdiction recognizes and protects an individual liberty interest that flows from the Due Process Clause and requires that maintenance of the suit "not offend 'traditional notions of fair play and substantial justice.'" Ins. Corp. of Ireland, 456 U.S. at 702 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." Id. at 703. Because the requirement of personal jurisdiction functions to protect an individual right, it can, like other such rights, be waived. Id.; Landers, 872 S.W.2d at 675.

### B. Void Judgments

"[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, [the] exception to finality would swallow the rule." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) (internal citation omitted). A judgment rendered by a court lacking either personal or subject matter jurisdiction is void. Ins. Corp. of Ireland, 456 U.S. at 694; Hood v. Jenkins, 432 S.W.3d 814, 825 (Tenn. 2013); Gentry v. Gentry, 924 S.W.2d 678, 680 (Tenn. 1996).[13] Nevertheless, a judgment of a court of general jurisdiction is presumed to be valid and will be held void only when "its invalidity is disclosed by the face of that judgment, or in the record of the case in which that judgment was rendered." Giles v. State ex rel. Giles, 235 S.W.2d 24, 28 (Tenn. 1950); see also Hood, 432 S.W.3d at 825.

---

[13] This proposition "traces back to the English Year Books" and was well-entrenched in American law even before the United States Supreme Court held in Pennoyer v. Neff, 95 U.S. 714, 732 (1878) that the judgment of a court lacking personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment. Burnham v. Superior Court of California, Cnty. of Marin, 495 U.S. 604, 608 (1990) (plurality opinion) (collecting early American decisions on the subject).

A [judgment] is absolutely void if it appears on the face of the record itself either that the Court had no general jurisdiction of the subject matter, or that the [judgment] is wholly outside of the pleadings, and no consent thereto appears. A [judgment] is void as to any person shown by the record itself not to have been before the Court in person, or by representation. A [judgment] not *prima facie* void is valid and binding . . . .

All [judgments] not thus appearing on their face to be void are absolutely proof against collateral attack, and no parol proof is admissible on such an attack to show any defect in the proceedings, or in the [judgment].

Gentry, 924 S.W.2d at 680 (Tenn. 1996) (quoting William H. Inman, Gibson's Suits in Chancery § 228 at 219–20 (7th ed. 1988)). If the defect allegedly rendering the challenged judgment void is not apparent from the face of the judgment or the record of the proceeding from which the challenged judgment emanated and must instead be established by additional proof, the judgment is merely voidable, not void. Hood, 432 S.W.3d at 825.

The trial court's subject matter jurisdiction over Father's petition to terminate Mother's parental rights has not been questioned, nor has any contention been made that the default judgment terminating Mother's parental rights was outside the scope of the pleadings. This case focuses solely on whether the default judgment terminating Mother's parental rights is void because the constructive service by publication was not accomplished in accordance with statutory requirements and therefore failed to provide the trial court with personal jurisdiction over Mother.[14]

### C. Obtaining Personal Jurisdiction

A court obtains personal jurisdiction over a party defendant by service of process. Ramsay v. Custer, 387 S.W.3d 566, 568 (Tenn. Ct. App. 2012); see also Johnson v. McKinney, 222 S.W.2d 879, 883 (Tenn. Ct. App. 1948) ("The general rule is that notice by service of process *or in some other manner provided by law* is essential to give the court jurisdiction of the parties; and judgment rendered without such jurisdiction is void and subject to attack from any angle." (emphasis added)). "The record must establish

---

[14] Mother appeared through counsel in the divorce proceeding and was represented by counsel when Father filed his initial motion to terminate her parental rights, but Father's initial motion was never adjudicated. By the time Father filed his second petition to terminate Mother's parental rights, her attorney had been permitted to withdraw, so Mother was not before the trial court by representation when the default judgment terminating her parental rights was entered. Additionally, Mother did not confer personal jurisdiction upon the trial court by voluntarily participating in the termination proceeding. It is undisputed that constructive service by publication is the sole means by which the trial court allegedly acquired personal jurisdiction over Mother.

that the plaintiff complied with the requisite procedural rules, and the fact that the defendant had actual knowledge of attempted service does not render the service effectual if the plaintiff did not serve process in accordance with the rules." Ramsay, 387 S.W.3d at 568; see also Overby v. Overby, 457 S.W.2d 851, 852 (Tenn. 1970) ("That a judgment [i]n personam against a defendant who is not before the court either by service of process or by entry of appearance is void there can be no question. It is well settled that a judgment rendered against a defendant in any kind of a case, when process has never been served on him . . . *in the way provided by law*. . .; and where there has been no voluntary appearance of the defendant, *is clearly void*." (emphasis added) (citation and internal quotation marks omitted)). A court "without personal jurisdiction of the defendant" is wholly "without power to proceed to an adjudication" binding on that defendant, regardless of the specific reason such jurisdiction is lacking. Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 381 (1937).

Father argues that the judgment terminating Mother's parental rights is not void because the record contains prima facie evidence that the trial court acquired personal jurisdiction over Mother through constructive service by publication. Mother responds, however, that the record shows that Father failed to comply with the statutory requirements for constructive service by publication, and as a result, the judgment terminating her parental rights is void for lack of personal jurisdiction. The record unquestionably supports Mother's argument.

### D. *Constructive Service by Publication*

#### 1. *Constitutional Dimensions*

Constructive service by publication of a small notice in the classified section of a local newspaper has been an accepted method of substituted service for well over a century. See, e.g., Pennoyer v. Neff, 95 U.S. 714, 727 (1877). However, sixty-five years ago, the United States Supreme Court clarified that constructive service by publication is permissible only if it is accomplished in a manner reasonably calculated to give a party defendant adequate notice of the pending judicial proceedings. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

In Mullane, the Supreme Court observed that "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Id. at 313. The Supreme Court noted that personal service is the classic form of notice and is "always adequate in any type of proceeding." Id. at 313. But the Supreme Court stopped short of *mandating* personal service in all circumstances, explaining that "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." Id. at 313-14. Nevertheless, the Supreme

Court reiterated that "when notice is a person's due, process which is a mere gesture is not due process." Id. at 315. The Supreme Court highlighted some of the problems with publication notice:

> It would be idle to pretend that publication alone . . . is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed . . . . In weighing its sufficiency on the basis of equivalence with actual notice, we are unable to regard this as more than a feint.

Id. For missing or unknown persons, the Supreme Court explained that service by this "indirect and even . . . probably futile" means—publication—does not raise Due Process concerns. Id. at 317. But as to known parties with known addresses, the Supreme Court concluded that notice by publication is constitutionally defective because it is not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314.

The Court revisited Mullane thirty-three years later in Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983). There, a landowner signed a mortgage in favor of the Mennonite Board of Missions. Id. at 792. After the landowner failed to pay property taxes, the county began proceedings to sell the property. Id. at 794. Indiana law required posting notice at the county courthouse and publishing notice for three consecutive weeks but allowed the county to sell the property thereafter to the highest bidder. Id. at 793. After the auction, a two-year redemption period commenced, during which anyone with an interest in the property could pay the delinquency. Id. Failing that, the purchaser acquired the deed. Id. at 794. The county published notice and auctioned the property. Id. Adams, as the high bidder, sued to quiet title to the property. Id. at 794-95. Mennonite Board of Missions did not learn of the tax sale until after the redemption period had expired and argued that publication notice of the tax sale was constitutionally inadequate. Id. The Indiana courts rejected this argument, but the Supreme Court held that "*unless the mortgagee is not reasonably identifiable*, constructive notice alone does not satisfy the mandate of Mullane." Id. at 798 (emphasis added). The Supreme Court observed that Mennonite Board of Missions' identity was known, and it assumed that its address could have been ascertained by reasonably diligent efforts. Id. at 798 n.4. The Supreme Court held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding

which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." Id. at 800. The Supreme Court held that publication notice failed to provide Mennonite Board of Missions with due process. Id.

From these decisions, a common theme emerges: constructive service by publication should be viewed as a last resort means of serving a party whose identity is known. See Walker v. City of Hutchinson, 352 U.S. 112, 117 (1956) ("In too many instances notice by publication is no notice at all."); City of New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best."); In re Adoption of M.D.W., Jr., No. M2007-01689-COA-R3-PT, 2008 WL 820561, at *2 (Tenn. Ct. App. Mar. 26, 2008) ("Constructive service is the last resort and is only permitted when the defendant's residence is unknown."); 1 Restatement (Second) of Judgments § 2, reporter's note cmt. a (1982) ("Some courts still do not seem to have appreciated the thrust of Mullane. The critical distinction is between notice to known claimants and notice to persons unknown. Notice by publication meets the requirement of adequate notice as to the latter but not as to the former." (internal citations omitted)).

### 2. Statutory Requirements for Constructive Service by Publication

Tennessee statutes permitting constructive service by publication incorporate safeguards to ensure that the foregoing constitutional principles are satisfied. See Garland v. Seaboard Coastline R.R., 658 S.W.2d 528, 530 (Tenn. 1983) (recognizing that the provisions of Rule 4 of the Tennessee Rules of Civil Procedure were designed to ensure that process is served in a manner reasonably calculated to provide a defendant with adequate notice of pending judicial proceedings); Freeman v. City of Kingsport, 926 S.W.2d 247, 250 (Tenn. Ct. App. 1996) (holding that the "diligent inquiry" language of Tennessee Code Annotated section 21-1-203 essentially codifies the constitutional due process standard that "actual notice is required if the interested party's name and address are reasonably ascertainable"). Therefore, because service of process is not "a mere perfunctory act" but has "constitutional dimensions," a plaintiff who resorts to constructive service by publication must comply *meticulously* with the governing statutes. In re Z.J.S., No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *6 (Tenn. Ct. App. June 3, 2003) (citing In re Baby Girl B, 618 A.2d 1, 17 (Conn. 1992)). Father failed to comply with the governing statutes.

Service of process in termination of parental rights cases in chancery and circuit courts is accomplished pursuant to the Tennessee Rules of Civil Procedure and state statutes. Tenn. Code Ann. §§ 36-1-113(e), -117(m)(1). With respect to constructive service, the Tennessee Rules of Civil Procedure generally defer to the statutes. See Tenn. R. Civ. P. 4.08 ("In cases where constructive service of process is permissible under the

-17-

statutes of this state, such service shall be made in the manner prescribed by those statutes, unless otherwise expressly provided in these rules.").  Several statutes address the topic of constructive service by publication.  First, Tennessee Code Annotated section 21-1-203(a) authorizes dispensing with personal service of process in various circumstances, including, "[w]hen the residence of the defendant is unknown and cannot be ascertained upon diligent inquiry."  Tenn. Code Ann. § 21-1-203(a)(5).  To dispense with personal service of process in any of the instances described in subsection (a), however, subsection (b) requires that the facts "be stated under oath in the bill, or by separate affidavit, or appear by the return."  Id. § 21-1-203(b).  Another statute, which applies specifically to parental termination proceedings, provides that, when a plaintiff seeks to dispense with personal service of process, the plaintiff must move "for an order of publication" and states that the plaintiff's motion "*shall be accompanied by an affidavit of the petitioners or their legal counsel attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought*."  Id. § 36-1-117(m)(3) (emphasis added).[15]

Thus, consistent with Mullane and Mennonite Board of Missions, Tennessee statutes authorize dispensing with personal service of process in a proceeding to terminate parental rights only if: (1)"the defendant's residence is unknown and cannot be ascertained upon *diligent inquiry*,"  Tenn. Code Ann. § 21-1-203(a)(5); and (2) the plaintiff has asked for an order authorizing constructive service by publication and has supported the request with an affidavit "attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought."  Tenn. Code Ann. § 36-1-117(m)(3).  Only when the residence of the defendant cannot be obtained through diligent inquiry may a party resort to constructive service by publication.  The statute permitting constructive service by publication in parental termination proceedings specifically "places the burden of demonstrating diligent inquiry upon the petitioners by requiring a detailed affidavit from the petitioners or their legal counsel attesting to all efforts made to determine the whereabouts of the unserved party."  In re Adoption of F.M.B.P.W., No. M2007-01691-COA-R3-PT, 2008 WL 821670, at *2.  (Tenn. Ct. App. Mar. 26, 2008); see also Tenn. Code Ann. § 36-1-117(m)(3) (describing the required affidavit).

In determining whether the default judgment terminating Mother's parental rights is void for lack of personal jurisdiction, we have limited our consideration to the face of the default judgment itself and the record of the proceedings from which the judgment emanated.  The record contains neither a motion from Father requesting an order authorizing constructive service by publication nor an affidavit describing the diligent inquiries that were made to locate Mother's whereabouts or her residence.  The sole

---

[15] The current text of Tennessee Code Annotated section 36-1-117(m)(3) is identical to the statutory text in place when Father filed his petition and relied upon constructive service by publication.

affidavit in the record, filed by counsel for Father in support of Father's motion for default judgment, states only that, "[a]fter a failure to obtain service on [Mother] because she had moved with no [ ] forwarding address, service on [her] was obtained by publication." This affidavit is facially insufficient to satisfy the statutory requirement. Not only was this affidavit submitted *after* Father had resorted to constructive service by publication, it provided no detailed description of any diligent inquiries or efforts that were made to locate Mother or her residence.

Furthermore, the record contains no order from the trial court authorizing constructive service by publication. The only document in the record bearing any resemblance to such an order is the "Non-Resident Notice," which was signed by the Clerk and Master. But even this document fails to describe any diligent inquiries or efforts that were made to locate Mother, and this document lacks any reference to a separate affidavit providing this information. Indeed, the "Non-Resident Notice" purported to authorize constructive service by publication based upon the allegations of Father's petition alone.

The record of the proceedings in which Mother's parental rights were terminated thus demonstrates that Father failed to submit the statutorily required affidavit detailing his diligent efforts to locate Mother's whereabouts or residence. Father's evident failure to comply with the statutory requirements necessary for dispensing with personal service and resorting to constructive service by publication deprived the trial court of personal jurisdiction over Mother. Therefore, as the trial court and Court of Appeals determined, the judgment terminating Mother's parental rights is void.

Having determined that the record of the termination proceedings demonstrates that the default judgment terminating Mother's parental rights is void, we need not address Father's argument that the evidence offered at the hearing on Mother's petition to set aside the default judgment preponderates against the trial court's finding that Father failed to exercise diligent efforts to locate Mother. We reiterate that, when determining whether a judgment is void, a court must confine its review to the record of the proceeding from which the judgment emanated. If additional evidence is required to establish a defect, then the challenged judgment is voidable, not void. Hood, 432 S.W.3d at 825. Had Father provided the statutorily required affidavit detailing his diligent efforts to locate Mother's residence, Mother would not have been permitted to attack the validity of the judgment via Rule 60.02(3) by offering evidence in addition to that in the record to impeach the averments of the affidavit. By the same token, Father cannot now, in response to Mother's Rule 60.02(3) motion, validate the void judgment by supplying evidence of diligent efforts that he failed to provide in the statutorily required affidavit *before* resorting to constructive service by publication. The trial court thus had no obligation to engage in a post hoc determination of whether Father satisfied the diligent efforts standard.

Nevertheless, even if Father could validate the constructive service by publication by offering after-the-fact evidence of diligent efforts, we conclude that the record fully supports the trial court's finding that Father failed to establish diligent efforts. Father admitted that his efforts to locate Mother consisted solely of: (1) attempting to serve Mother at the marital home address while knowing that he owned the home and that Mother had not resided there since May 24, 1999, when the couple separated; and (2) consulting with counsel. Father made no attempt to serve Mother at the address her own lawyer had used when sending notice of the hearing on his motion to withdraw from representing Mother, even though that address appeared in the record of the divorce proceeding. We need not in this appeal undertake an exhaustive analysis of the measures that must be taken to satisfy the diligent efforts standard. Wilson v. Blount Cnty., 207 S.W.3d 741, 747 (Tenn. 2006) (discussing diligence in the context of personal service of process). Suffice it to say that the diligent efforts standard requires more than attempting to serve a defendant with process at a location where the plaintiff knows the defendant will not be found. "[A]ctions taken to achieve service of process in these [termination] cases should not be merely perfunctory." Adoption Place, Inc. v. Doe, 273 S.W.3d 142, 148 (Tenn. Ct. App. Dec. 5, 2007) (citing In re C.L.M., No. M2004-02922-COA-R3-PT, 2006 WL 842917, at *5 (Tenn. Ct. App. Mar. 30, 2006)).

We also reject Father's argument that any failure on his part to exercise diligence should be excused because he had no knowledge or information that would have enabled him to locate Mother or her address; thus, any attempt to locate her would have been futile. We have no way of knowing now whether Father would have been successful in locating Mother had he diligently attempted to do so at the time he filed his petition to terminate her parental rights. In the face of statutory and constitutional requirements and Father's own admission that he made no effort at all to locate Mother before resorting to constructive service by publication, we cannot excuse his blatant noncompliance. We reiterate that Tennessee Code Annotated sections 21-1-203(a) and 36-1-117(m)(3), consistent with constitutional due process principles, require that diligent efforts be made and prescribe the circumstances and procedures that must be followed before a plaintiff may resort to constructive service by publication in termination of parental rights actions. The record reflects clearly that Father failed to abide by these statutory procedures. Therefore, constructive service by publication was ineffective, and the judgment terminating Mother's parental rights is void for lack of personal jurisdiction.

### E. Reasonable Time Filing Requirement

Father next contends that Mother is not entitled to relief from the void default judgment because she failed to file her petition to set it aside within a reasonable time as required by Tennessee Rule 60.02. Mother responds that her petition to set aside the void judgment is not subject to the reasonable time filing requirement of Tennessee Rule 60.02.

The Tennessee Rules of Civil Procedure became effective on January 1, 1971. See Hunter v. Bowman, 535 S.W.2d 853, 854 (Tenn. 1976). The text of Tennessee Rule 60.02 relevant to the issue in this appeal has remained unchanged since its adoption[16] and provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than a year after judgment, order or proceeding was entered or taken.*

Tenn. R. Civ. P. 60.02 (emphasis added). The plain language of Tennessee Rule 60.02 indicates that the "reasonable time" filing requirement applies to all motions for relief from judgment, including motions attacking a judgment as void based upon Tennessee Rule 60.02(3). This Court has stated that the reasonable time filing requirement applies to all motions filed under Tennessee Rule 60.02, but we were not at that time considering a motion based on Tennessee Rule 60.02(3). See Furlough, 397 S.W.3d at 128 ("All motions for relief based on Rule 60.02 'shall be made within a reasonable time.'" (quoting Tenn. R. Civ. P. 60.02.)). With respect to void judgments, Tennessee courts have held, both before and after the adoption of Tennessee Rule 60.02, that such judgments are subject to attack at any time. See, e.g., Acuff v. Daniel, 387 S.W.2d 796, 798 (Tenn. 1965); Tennessee Marble & Brick Co. v. Young, 163 S.W.2d 71, 75 (Tenn. 1942); Barbash v. Bruell, No. E2005-00387-COA-R3-CV, 2006 WL 568230, at *2 (Tenn. Ct. App. Mar. 9, 2006); Team Design v. Gottlieb, 104 S.W.3d 512, 525 (Tenn. Ct. App. 2002), overruled on other grounds by Tuetken v. Tuetken, 320 S.W.3d 262 (Tenn. 2010); West v. Jackson, 186 S.W.2d 915, 917 (Tenn. Ct. App. 1944).

Although this Court has not addressed whether the reasonable time filing requirement of Tennessee Rule 60.02 applies to motions under Tennessee Rule 60.02(3), the Court of Appeals addressed this issue in Pittman v. Pittman, No. 01-A-01-9301-CH00014, 1994 WL 456348, at *2-3 (Tenn. Ct. App. Aug. 24, 1994).

---

[16] The text of Rule 60.02 at the time of its adoption is available at In Re: Rules of Civil Procedure, 223 Tenn. 655, 780-81 (1970).

In <u>Pittman</u>, the intermediate appellate court first emphasized, correctly, that Tennessee Rule of Civil Procedure 60.02(3) is "identical" to Rule 60(b)(4) of the Federal Rules of Civil Procedure, and as a result, the Court of Appeals looked to federal precedents "for helpful guidance." <u>Id.</u> at *2. The <u>Pittman</u> court determined that a majority of federal courts had held that Federal Rule of Civil Procedure 60(b)(4) "does not impose a time limit on post-judgment motions challenging a void judgment, although some text writers envision that exceptional circumstances may exist wherein the reasonable time limitation would require a showing of diligence on the part of the movant." <u>Id.</u> (citation omitted) (citing 7 James W. Moore & Jo Desha Lucas, <u>Moore's Federal Practice</u> ¶ 60.25[4], at 60-242 (2d ed. 1993)). Accordingly, the <u>Pittman</u> court held "that the Tennessee Rules of Civil Procedure do not supplant the prior precedents concerning the time for challenging a void judgment," and absent "exceptional circumstances," Tennessee Rule 60.02 "does not place a time limit on the right to challenge a judgment on the ground that it is void." <u>Id.</u> (footnote omitted). The Court of Appeals has recited the <u>Pittman</u> holding with approval in subsequent decisions. <u>See, e.g.</u>, <u>Kelso v. Decker</u>, 262 S.W.3d 307, 311 (Tenn. Ct. App. 2008); <u>In re Estate of Taylor</u>, No. M2012-00596-COA-R3CV, 2013 WL 336001, at *4 (Tenn. Ct. App. Jan. 28, 2013). However, neither <u>Pittman</u>, nor any subsequent decision, has articulated the exceptional circumstances that would justify denying relief from a void judgment.

The legal landscape has changed little in the twenty years since the Court of Appeals decided <u>Pittman</u>. The text of Federal Rule 60[17] and Tennessee Rule 60.02 is still identical in all relevant respects. Similarly, a majority of federal courts interpreting Federal Rule 60 and a majority of state courts interpreting comparable procedural rules continue to hold that the reasonable time filing requirement does not apply to motions seeking relief from void judgments. <u>See, e.g.</u>, <u>Bell Helicopter Textron, Inc. v. Islamic Republic of Iran</u>, 734 F.3d 1175, 1180 & n.1 (D.C. Cir. 2013) (rejecting the argument that Federal Rule of Civil Procedure 60(b)(4) imposes a reasonable time limitation on motions seeking relief from void judgments and stating that "almost every other circuit court of appeals" had also "reject[ed] a time limit that would bar [such] motions"); <u>U.S. v. One Toshiba Color Television</u>, 213 F.3d 147, 157 (3d Cir. 2000) (stating that "nearly overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment"); <u>Hertz Corp. v. Alamo Rent–A–Car, Inc.</u>, 16 F.3d 1126, 1130 (11th Cir. 1994) (observing that the First, Fifth, Seventh, Tenth and D.C. Circuits hold that Rule 60(b)(4) motions are not subject to a reasonable-time limitation); <u>Ex Parte Full Circle Distribution, L.L.C.</u>, 883 So.2d 638, 642–43 (Ala. 2003) (collecting federal and state cases that impose no time limit); <u>In re Harrison Living Trust</u>, 112 P.3d

---

[17] The relevant text of Federal Rule 60 provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void . . . ." Fed. R. Civ. P. 60(b)(4). "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

1058, 1060 (Nev. 2005) (stating that most state and federal jurisdictions impose no time limit on motions challenging void judgments); Eggl v. Fleetguard, Inc., 583 N.W.2d 812, 814 (N.D. 1998) (interpreting the North Dakota rule consistently with federal decisions construing the corresponding federal rule as imposing no time limit on motions attacking a void judgment); Estate of Hutchins v. Fargo, 72 P.3d 638, 643 (Or. Ct. App. 2003) ("In short, the reasonable time to move to set aside a void judgment is forever[.]"); 11 Charles A. Wright et al., Federal Practice and Procedure § 2862, at 431 & n.3 (3d ed. 2005) (collecting cases). The rationale most often relied upon by courts in the majority is that void judgments are a nullity from their inception and cannot be validated by the passage of time. See, e.g., Farm Credit Bank of Baltimore v. Ferrera-Goitia, 316 F.3d 62, 67 (1st Cir. 2003) ("Since a void judgment is a legal nullity, there is ordinarily no need to request relief from it (and, thus, no time limit within which to request relief)."); Austin v. Smith, 312 F.2d 337, 343 (D.C. Cir. 1962) (stating that a void judgment cannot "acquire validity because of laches on the part of him who applies for relief from it"); Boseman v. Jarrell, 704 S.E.2d 494, 501-02 (N.C. 2010) ("[A] void judgment has no legal effect; it is a legal nullity that may be challenged at any time.").

Courts departing from the majority rule have held either that the reasonable time filing requirement functions as a bar to motions challenging judgments as void or that it serves as a factor for courts to consider when deciding whether to grant relief from void judgments. See, e.g., Bridgeport Music, Inc. v. Smith, 714 F.3d 932, 942-43 (6th Cir. 2013) ("A motion to vacate a judgment under Rule 60(b)(4)-(6) must be brought within a reasonable time. The reasonableness of the delay depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." (citations and internal quotation marks omitted)); U.S. v. Dailide, 316 F.3d 611, 618 (6th Cir. 2003) ("Fed. R. Civ. P. 60(b)(4) permits a collateral motion challenging a court's subject matter jurisdiction, but only if such lack of subject matter jurisdiction makes the judgment "void." However, we have held that such an attack is only cognizable if brought within a reasonable time."); McGrew v. McGrew, 82 P.3d 833, 841 (Idaho 2003) ("To obtain relief from a void judgment under Rule 60(b)(4) of the Idaho Rules of Civil Procedure, a party must bring a motion for such relief within a reasonable time. Where judgment is entered without the party's knowledge, what constitutes a reasonable time is judged from the time that the party learned of the judgment." (citation omitted)); In re Harrison Living Trust, 112 P.3d 1058, 1060 (Nev. 2005) ("We recognize that judgments, once found to be void, should generally be set aside. But we see no reason to ignore the express language of a rule that requires the district courts to consider the timeliness of a motion to set aside a void judgment when determining whether exceptional circumstances, such as lack of diligence or equitable estoppel, exist to justify denying the motion. The reasonableness of the time taken to set aside such judgments is an important factor in such cases."). Courts in the minority have based their decisions upon the plain language of their own procedural rules, which, like that of Tennessee Rule 60.02(4), literally apply the reasonable time filing requirement to motions seeking relief from void judgments. See,

e.g., In re Harrison Living Trust, 112 P.3d at 1060; McDaniel v. U.S. Fidelity and Guar. Co., 478 S.E.2d 868, 871 (S.C. Ct. App. 1996).

Having thoroughly considered the authorities on both sides of the issue, we reaffirm Pittman, which adopted the majority rule, and hold that Tennessee Rule 60.02 does not abrogate the longstanding rule that void judgments may be attacked at any time. The reasonable time filing requirement thus may not be applied to bar motions seeking relief from void judgments pursuant to Tennessee Rule 60.02(3). Nevertheless, we also conclude, as did the Court of Appeals in Pittman, that relief from a void judgment may be denied if certain exceptional circumstances exist.

### F. Exceptional Circumstances

As previously noted, no Tennessee court has attempted to define the exceptional circumstances that justify denying relief from a void judgment. Other jurisdictions have used the term "estoppel by benefit," rather than "exceptional circumstances," and have held that a party may be denied relief if the party has accepted the benefits of the void judgment. See Burgess v. Nail, 103 F.2d 37, 44 nn. 11-12 (10th Cir. 1939) (collecting cases); Estate of Tapp v. Tapp, 569 S.W.2d 281, 285 (Mo. Ct. App. 1978) (collecting cases); Mohler v. Shank's Estate, 61 N.W. 981, 984 (Iowa 1895); State ex rel York v. Daughtrey, 969 S.W.2d 223, 225 (Mo. 1998); Wohlegmuth v. 560 Ocean Club, 695 A.2d 345, 350 (N.J. Super. Ct. App. Div. 1997); Security-First Nat'l Bank of Los Angeles v. North Dakota Children's Home Soc'y, 85 N.W.2d 553, 563 (N.D. 1957); Edwards v. Edwards, 176 S.E.2d 123, 125 (S.C. 1970); Svatonsky v. Svatonsky, 389 P.2d 663, 665 (Wash. 1964); McDougall v. McDougall, 961 P.2d 382, 384 (Wyo. 1998) Black v. Black, 1 P.3d 1244, 1250 (Wyo. 2000).

The Restatement (Second) of Judgments has more precisely articulated the concepts of exceptional circumstances and estoppel by benefit as follows:

> Relief from a default judgment on the ground that the judgment is invalid will be denied if:
>
> (1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and
>
> (2) Granting the relief would impair another person's substantial interest of reliance on the judgment.

-24-

Restatement (Second) of Judgments § 66 (1982).[18] The following two comments provide particularly helpful insight as to the rationale underlying section 66 and the factual scenarios in which it should be applied.

> *a. Rationale.* Although the parties to an action may not endow an invalid judgment with validity as such, it has long been recognized that under certain circumstances relief may be denied against a judgment that was rendered without the requisites of validity. The apparent anomaly of thus according a "void" judgment the dispositive effect of a valid judgment has had various explanations. In an earlier era, when law and equity were separately administered, it was possible to say that the judgment remained "void" but that relief would be denied as a matter of the independent jurisprudence of equity. However, this only replaced the anomaly of a "void" judgment's being valid with the peculiarity that one part of the remedial system granted relief that another part of the system would deny. In some decisions, when considerations of fairness suggested the propriety of denying relief from a "void" judgment, it was explained that estoppel precluded the party from seeking relief, even though other decisions held that invalidity of a judgment cannot be repaired by estoppel.

> On closer analysis of the circumstances under which relief has been denied, these anomalies can be coherently resolved. The essential point is that parties to a dispute may resolve it not only by adjudication but by contract or concord, express or implied by conduct giving rise to an estoppel. Such a concord may be reached not only by direct communication with that purpose in view, but also by manifestation of intention concerning the matter in dispute. A judgment purporting to determine the rights of the parties, though lacking effect of its own force because of invalidity, can thus be adopted as a consensual resolution of the parties' rights. The party who obtained the judgment expresses his assent to the terms by obtaining the judgment; the other party expresses adherence by some act following the judgment in which the judgment is recognized as determinative.

---

[18] Some courts have expressly limited the estoppel by benefit principle to judgments that are void for lack of personal jurisdiction and have not applied the principle to judgments that are void for lack of subject matter jurisdiction. See, e.g., Shirley v. Maxicare Texas, Inc., 921 F.2d 565, 569 (5th Cir. 1991). This limitation is based on the distinctions between personal jurisdiction and subject matter jurisdiction and on the fact that personal jurisdiction can be waived but subject matter jurisdiction cannot be waived or conferred by agreement. Id. By dealing only with relief from invalid default judgments, section 66 may also implicitly recognize this limitation, since lack of personal jurisdiction is a common ground for attacking a default judgment. Because this appeal involves a judgment that is void for lack of personal jurisdiction, we need not decide whether section 66, or any other exceptional circumstances, will ever provide a basis for denying relief from a judgment that is void for lack of subject matter jurisdiction.

*b. Manifestation of intent.* There are various forms by which acceptance of the terms of an invalid judgment may be manifested. Occasionally a situation is found in which an express intention is forthcoming. More commonly encountered is that form of conduct often referred to as "acceptance of benefits," wherein the defaulting party conducts his own affairs on the basis of rights accorded him by the terms of the judgment. *In some instances, the party against whom the judgment was rendered may in subsequent events be placed in a position where he would be expected to deny the effect of the judgment but does not do so. His failure to protest the judgment in such a situation can be taken as an affirmation of the judgment because the circumstances invited an expression of a contrary position.* However, in the absence of such circumstances, silence is not a manifestation of assent. It is not enough that the person against whom the judgment was rendered simply failed to take action to attack the judgment or to protest the fact that it had been rendered. In this connection, it may be noted that under Federal Rule 60(b), passage of time does not preclude a party from seeking relief from a judgment that is "void" as defined in Rule 60(b)(4), a definition that corresponds to that in § 65.

*c. Interests of reliance.* The interests of reliance protected by denying relief may include property interests, interests in status, or interest in repose from legal controversy. Whether an interest of reliance is sufficient to justify denying relief is determined not only by the extent of reliance but also by the relative equities between the parties, as appraised according to the tradition that the court exercises discretion in determining whether to grant relief.

Id. § 66 cmts. a-c (emphasis added) (illustration omitted). "[W]hen the [challenged] judgment is for money, it may not affect the parties' future conduct—and hence create interests of reliance on the judgment—until an attempt is made to execute on the judgment." Id. § 65 cmt. c. On the other hand, "when a judgment has prominent future effects, *such as a judgment determining marital or filial status, reliance interests are very likely to arise.*" Id. (emphasis added). "Few judgments have more substantial future ramifications than those affecting parentage." In re E.R., 385 S.W.3d 552, 568 (Tex. 2012). As the Texas Supreme Court has explained:

Although courts have variously referred to a parent's inaction as waiver, estoppel, or laches, the theories merge: when a child's welfare hangs in the balance, the reliance interest created by a termination order need not yield when a parent learns of the order yet unreasonably fails to act. Unlike a judgment debtor who hopes to avoid collection efforts on a money judgment, a parent whose rights have been terminated has every incentive to promptly seek reinstatement upon learning of the termination.

Id. at 568-69. This statement is true in Tennessee as well, where "a parent's duty to support his or her child is owed to the child and continues until the age of majority, no matter where or with whom the child lives." Kirkpatrick v. O'Neal, 197 S.W.3d 674, 680 (Tenn. 2006).

We conclude, as have other state courts, that section 66 of the Restatement (Second) of Judgments provides a sensible and balanced definition of the exceptional circumstances which justify denying relief from a default judgment that is void for lack of personal jurisdiction. See In re Paternity of T.M.Y., 725 N.E.2d 997, 1003 (Ind. Ct. App. 2000) (discussing and applying section 66 of the Restatement (Second) of Judgments); In re E.R., 385 S.W.3d at 567-69 (remanding to the trial court to determine whether the mother should be denied relief from the void order terminating her parental rights based on section 66 of the Restatement (Second) of Judgments); McDougall, 961 P.2d at 384 (citing section 66 of the Restatement (Second) of Judgment and recognizing the doctrine of estoppel as an exceptional circumstance that does not validate an invalid decree but which functions as a disability that precludes a party from obtaining relief from it).

### G. Remand for Hearing and Application of Section 66

Having concluded that section 66 provides the appropriate legal definition of exceptional circumstances, we must set aside the trial court's and Court of Appeals' judgments and remand this case to the trial court to determine, after a hearing, whether the exceptional circumstances defined by section 66 justify denying Mother relief from the void judgment terminating her parental rights. The hearing on remand will afford the parties an opportunity to be heard and to present proof relevant to the exceptional circumstances as defined by section 66. Cf. State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996) (adopting a new legal standard and remanding to the trial court to allow for additional development of the factual record with the new standard in mind and for reconsideration in light of the new standard).

### 1. Manifested Intention

Specifically, section 66 will require the trial court on remand to determine whether, after receiving actual notice of the judgment terminating her parental rights, Mother manifested her intention to treat the judgment as valid. The undisputed facts in the record on appeal establish that Mother waited approximately two years after receiving actual notice of the default judgment terminating her parental rights before filing her petition for relief from it under Tennessee Rule 60.02(3). During this two-year period, the proof in the record indicates that Mother did not attempt to contact, visit, or provide

financial support for the children, although she knew where Father was employed.[19] On remand, the trial court should consider these circumstances, and any other relevant proof the parties present, when determining if Mother's inaction "can be taken as an affirmation of the judgment because the circumstances invited an expression of a contrary position." Restatement (Second) of Judgments § 66 cmt. b.

## 2. *Substantial Reliance Interest*

If the trial court finds that Mother manifested an intention to treat the judgment terminating her parental rights as valid, then the trial court must determine whether granting relief from that judgment "would impair another person's substantial interest of reliance on the judgment." Id. § 66. Reliance interests protected by denying relief include "interests in status" and "interest in repose from legal controversy." Id. § 66 cmt. c. Father's petition to terminate Mother's parental rights recited that the woman he had remarried after divorcing Mother was functioning as the children's parent and intended to adopt them. However, aside from the statements of counsel in the trial court,[20] additional statements of counsel during oral argument before this Court,[21] and the Court of Appeals' statement that Father's new wife "subsequently sought to adopt the children in another court,"[22] the record does not actually establish, by stipulation of the parties or any other permissible means,[23] whether an adoption ever occurred before Mother filed her petition under Tennessee Rule 60.02(3) seeking relief from the void judgment. Neither child testified at the hearing, nor did the woman Father married after divorcing Mother. Additionally, we note that one child is no longer a minor, and the other child will reach

---

[19] Consistently with section 66, the trial court must limit its consideration of whether Mother manifested an intention to treat the judgment as valid to Mother's conduct during the two-year period after she received actual notice of the order terminating her parental rights, even though the record indicates that Mother made no effort to contact, visit, or financially support the children after the date of her last visit on January 3, 2000—more than ten years before her motion was filed. As explained below, however, the trial court may consider Mother's conduct during the time before she obtained actual notice of the judgment when determining whether granting relief from it "would impair another person's substantial interest . . . ." Id. § 66.

[20] Before the trial court, counsel for Father stated that "the termination of parental rights and subsequent adoption has been in effect for a period of almost nine years."

[21] During oral arguments before this Court, Father's attorney made statements indicating that the children have been adopted by the woman Father married after divorcing Mother. Counsel for Mother stated that Father had already filed a new action in Madison County seeking to terminate Mother's parental rights and that the new action had been stayed pending resolution of this appeal.

[22] Turner v. Turner, No. W2013-01833-COA-R3-CV, 2014 WL 3057320, at *2 (Tenn. Ct. App. July 7, 2014).

[23] See Tenn. Code Ann. §§ 36-1-125 to -126 (2014) (discussing the confidentiality of adoption records and access to them).

majority on January 4, 2016. A person eighteen or older may choose to be adopted, and when this choice is made, "only the sworn, written consent of the person sought to be adopted shall be required." Tenn. Code Ann. § 36-1-117 (j)(1) (2014). The record on appeal contains no proof establishing: (1) whether the children have ever been adopted by the woman Father married after divorcing Mother; (2) whether either child has a preference concerning a maternal relationship with Mother or the woman Father married after divorcing Mother; and (3) whether the adult child has already made legal choices concerning adoption, as the law permits. These are factual matters the trial court must resolve on remand when determining whether granting Mother relief from the void judgment would impair another person's substantial reliance interests in status. See In re E.R., 385 S.W.3d at 569 ("If, after learning that a judgment has terminated her rights, a parent unreasonably stands mute, and granting relief from the judgment would impair another party's substantial reliance interest, the trial court has discretion to deny relief."); Restatement (Second) of Judgments § 66 illust. 3 (person who was not a party to the original proceedings that resulted in the void judgment may contest the petitioner's action to set aside the void judgment); Attebery v. Attebery, 111 N.W.2d 553, 555 (Neb. 1961) (stating that a party against whom void divorce was obtained may be barred if he delays proceedings to contest the decree, to the detriment of "innocent persons" such as the other party's new spouse) (cited in Reporter's Note to Restatement (Second) of Judgments § 66). Whether Father's decision to refrain from seeking child support also amounts to a substantial reliance interest that would be impaired by granting Mother relief from the void judgment is another factual matter that should be developed and considered on remand.[24]

Furthermore, in determining whether granting relief from the void judgment would impair another person's substantial reliance interest, the trial court may consider the relative equities between the parties. See Restatement (Second) of Judgments § 66 cmt. c. Mother's failure to make any effort to contact her children or financially support them from January 2001 until July 29, 2010, when she filed her petition is relevant to determining where the relative equities lie. This is particularly true here, where, although Father's residence changed, his place of employment remained the same throughout the years of Mother's inaction. Thus, the record on appeal establishes that Mother could have attempted to contact and support her children during this time by contacting Father

---

[24] We decline to address in this appeal Father's assertion that the one-year statute of repose applicable to termination of parental rights proceedings, Tennessee Code Annotated section 36-1-113(q), bars Mother's claim. As the Court of Appeals recognized, Father failed to argue that this statute applies to bar challenges to void judgments, and the Attorney General asserted that the statute of repose does not apply to void judgments, like the judgment at issue in this appeal. Thus, we decline to address the question in this appeal. We note, however, that Mother argued that applying the statute of repose in these circumstances would be unconstitutional, and most state courts have held that a state-law time limit, even those imposed on judgments terminating parental rights or finalizing adoptions, cannot be applied in a manner that would deprive the party challenging the judgment of Due Process. See In re E.R., 385 S.W.3d at 562 & n.21 (collecting cases).

at his place of employment but failed to do so. On remand, the trial court may consider this circumstance, and any other fact relevant to the relative equities of the parties, when determining whether granting relief from the void judgment would substantially impair another person's substantial reliance interest on the judgment.

## IV. Conclusion

Having carefully considered the record on appeal and the relevant authorities, we conclude that the courts below correctly held that the judgment terminating Mother's parental rights is void for lack of personal jurisdiction. We also conclude that, although the reasonable time filing requirement does not apply to bar motions filed under Tennessee Rule 60.02(3), exceptional circumstances as defined by section 66 of the Restatement (Second) of Judgments may justify denying relief from a void judgment. We remand to the trial court for a hearing, consistent with this decision, to determine whether exceptional circumstances justify denying Mother relief in this case. Costs of this appeal are taxed to Kevin Turner, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE