IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 20, 2017 Session

**IN RE  GABRIELLE W.**

**Appeal from the Circuit Court for Greene County
No. 08A015  Beth Boniface, Judge**

_____

**No. E2016-02064-COA-R3-PT**

_____

In this appeal the biological father to the child at issue sought to set aside the Final Order of Adoption.  Following a hearing, the trial court declared the Final Order of Adoption void on its face, finding that the court did not have personal jurisdiction over the biological father to terminate his parental rights.  The guardian failed to sign his notice of appeal pursuant to Tennessee Code Annotated section 36-1-124(d), requiring us to grant the father's motion to dismiss the guardian's appeal and leave in place the trial court's decision to void the Final Order of Adoption.

**Tenn. R. App. P. 3 Appeal as of Right; Motion to Dismiss Appeal Granted;
Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Linda Thomas Woolsey, Greeneville, Tennessee, for the appellant, James M.R., Jr.

Michael B. Menefee, Knoxville, Tennessee, for the appellee, Dusty A.W.

**OPINION**

**I.  BACKGROUND**

This matter relates to the termination of the parental rights of Dusty A.W. ("Father") to Gabrielle W. ("the Child") and the subsequent adoption of the Child by James M.R. and Martha L.R. ("Guardian(s)")[1]; therefore, the factual background will

---

[1]The Child's biological mother did not object to the termination of her parental rights and is not a party in this appeal. Martha L.R. died of complications from cancer in 2014.

mostly contain information pertaining to Father, the Child, and Guardians.

The Child was born to Shawnoka D.W. ("Mother") and Father on May 23, 2006, as a result of a transient sexual encounter. Father and Mother were not in a relationship at the time of the birth. When the Child was born, Mother tested positive for Benzodiazepines and admitted to taking illicitly obtained Valium, Percocet and Oxycontin during her pregnancy.

In June 2006, after the Tennessee Department of Children's Services ("DCS") removed the Child from care of Mother as a result of her drug use, DCS placed the Child with her maternal aunt and uncle (Mother's sister and her partner), Amber R. and James K. While the Child was in her custody, Amber R. utilized the babysitting services of Guardians. After two to three months, the Child began to reside primarily with Guardians, which was acknowledged in an order from the Juvenile Court in September 2006. A year later, in an order dated September 11, 2007, custody of the Child was transferred from DCS to Guardians.

In the September 2006 hearing, the identity of the biological father of the Child was discussed. Guardians were present at this hearing. Mother initially stated that she did not know the identity of the Child's father. At the insistence of the court, Mother related the name of "Dustin W.," a misspelling of Father's first and last name, from Galveston, Texas. Mother also revealed that the biological father is a crane operator who travels for work. The court's order reflected that "the Court is informed that Dustin W. . . . in Texas, may be the Father of the child."

Mother later testified that she told several people, including her sister Amber R., Martha L.R., and persons in the court system, that there were several possibilities of who the father of the Child could be. Amber R. testified to Mother's statement, including that the father could be a man in Texas named Dustin. James M.R. testified to hearing the name "Dustin W[.]" in the initial September 2006 proceeding but stated that he had no other information beyond that. He has never spoken to Mother about Father or directly with Father. It is also on record that Mother told Martha L.R. that either Father or Bill H., a local paramour of Mother's, could be the father of the Child and that Father was coming to visit her after the Child's birth.

Both Mother and Father agree that Mother contacted Father and told him that she was pregnant and he was possibly the father. Mother also visited Father in Texas shortly after her declaration, and they spent several days together. Upon the Child's birth, Mother called Father to tell him that the Child might be his. Father then traveled to Greeneville, Tennessee where Mother lived in an effort to see the Child. However, after picking him up at the bus station and dropping him off at a hotel, Mother never returned to see Father. After two days alone at the hotel, Father left. He testified that Mother later

called to inform him that according to DNA test, the Child was not his.[2]  On August 20, 2009, the Child was adopted by Guardians.

In December of 2011, five years after the birth of the Child, Mother contacted Father to tell him that she now believed the Child was his but that she no longer had custody of the Child.  However, given previous conversations, Father did not automatically believe Mother and began an inquiry into any information about the Child. Unable to receive any official information or documentation of the Child's adoption, Father hired his current attorney to help request access to the adoption records.  No records were found, due to Father having the incorrect birth date of the Child and a misspelling of the Child's name on her birth certificate.

When Father believed that there was no adoption on record, he filed a Petition to Establish Paternity in March 2013 with the Greene County Juvenile Court.  After inspecting previous Juvenile Court files in relation to the Child, Father filed an Amended Petition to Establish Paternity in April 2013, including the fact that Mother had identified him as a possible father in the previous proceeding in September 2006.  This petition resulted in a hearing later that month where Guardians presented actual evidence of an adoption.  Subsequently, the case was transferred to the Circuit Court.

Following the transfer, Father filed several motions for access to the court file for the Child, which were ultimately denied.  After filing a Motion to Set Aside Final Order of Adoption, Father was granted a hearing and access to the court files.  At the hearing, the court determined that because Guardians knew Father's name and the state and city where he lived, Father was entitled to notice of the adoption proceedings and service of process.  The trial court found that personal jurisdiction over Father had not been obtained at the time of the Final Order of Adoption.  Because Father was not properly before the court, the final order was declared void on its face and the termination of parental rights not applicable as to Father.  The court also found that no exceptional circumstances existed to bar Father's requested relief.  The court concluded, however, that voiding the Final Order of Adoption did not automatically transfer custody of the Child to Father.  Thus, the Child remained in the custody of Guardian.  A timely notice of appeal was filed by Guardian's counsel.

## II. ISSUES

We restate the issues raised on appeal by Guardian as follows:

A. Whether the trial court erred in concluding that Father was a putative father entitled to the notice and protections

---

[2]Mother testified that she did not say this.

afforded pursuant to Tennessee Code Annotated section 36-1-117(c).

B. Whether the trial court erred in finding that the Final Order of Adoption is void as against Father for lack of personal jurisdiction.

C. Whether the trial court erred in finding that exceptional circumstances do not exist to bar Father's requested relief in voiding the Final Order of Adoption.

D. Whether the trial court erred by dismissing the Petition for Adoption by Guardian after declaring the Final Order of Adoption to be void on its face and vacated as to Father.

The additional issues raised on appeal by Father are restated as follows:

A. Whether the trial court erred in allowing testimony from Dr. Heather Gow regarding the bond the Child may have established with Guardian.

B. Whether the trial court erred by not transferring physical and legal custody of the Child to Father after voiding the Final Order of Adoption as against Father.

Additionally, in a motion to dismiss the appeal, Father argued the following:

C. Whether Guardian's failure to sign the notice of appeal deprives the court of jurisdiction and the appeal should be dismissed.

## III. STANDARD OF REVIEW

"[A] void judgment is one that is invalid on its face because the issuing court either lacked subject matter or personal jurisdiction over the proceedings, or the judgment itself was outside of the pleading." *See Hood v. Jenkins*, 432 S.W.3d 814, 825 (Tenn. 2013). As our Supreme Court in *Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015) has observed:

[W]e review a trial court's ruling on a request for relief from a final judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure pursuant to the abuse of discretion standard .

- 4 -

. . . [W]e have previously held that "[w]hether a trial court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness." Moreover "[a] decision regarding the exercise of personal jurisdiction over a defendant involves a question of law" to which de novo review applies . . . .

*Id.* (internal citations omitted). We "apply de novo review, with no presumption of correctness, when reviewing a trial court's ruling on a Tennessee Rule 60.02(3) motion to set aside a judgment as void. Any factual findings a trial court makes shall be reviewed de novo, with a presumption of correctness, unless the evidence preponderates otherwise." *Id.* at 269 (citing Tenn. R. App. P. 13(d)).

## IV. DISCUSSION

Failure to Sign Notice of Appeal

As a threshold issue, we must first address whether the failure to sign the notice of appeal deprives this court of jurisdiction, thereby requiring dismissal of the appeal. "Subject matter jurisdiction confines judicial power to the boundaries drawn in constitutional and statutory provisions. As a result, '[a] party's consent, silence, waiver . . . is not sufficient to confer subject matter jurisdiction.'" *Turner*, 473 S.W.3d at 270 (internal citations omitted). *See also* Tenn. R. Civ. P. 12.08 (stating that subject matter jurisdiction may not be waived).

As approved by the Governor on April 27, 2016, and taking effect July 1, 2016, the recently added subsection (d) of Tennessee Code Annotated section 36-1-124 provides: "Any notice of appeal filed in a termination of parental rights action shall be signed by the appellant." In this case, Guardian's notice of appeal filed on or about October 11, 2016, while timely, was only signed by his attorney, Linda Thomas Woolsey. Father argues that Guardian's failure to sign the notice of appeal violates the direct language of the statute, thereby requiring dismissal of the appeal.

This issue has been raised in other cases but has not been resolved by the courts of this state.[3] However, the issue has been considered and addressed in other states with

---

[3]In *In re Cannon B.*, No. E2016-01826-COA-R3-PT, 2016 WL 6994982, at *1 (Tenn. Ct. App. Nov. 28, 2016), a memorandum opinion, the appeal was dismissed on other grounds and there was no need to address the argument that the Notice of Appeal did not comply with section 36-1-124(d). In *In re: James V.*, No. M2016-01575-COA-R3-PT, 2017 WL 2365010 (Tenn. Ct. App. May 31, 2017), although DCS noted in a footnote in its brief that "[t]he notice of appeal was not signed by Mother as required by Tenn. Code Ann. § 36-1-124(d) . . . DCS did not present "any

- 5 -

similar statutory requirements. In Utah, Utah Code Annotated section 78-3a-909(2) (renumbered as § 78A-6-1109),[4] sets forth the similar requirements of filing a notice of appeal in child welfare cases:

> Appeals of right from juvenile court orders related to abuse, neglect, dependency, termination, and adoption proceedings . . . must be signed by appellant's counsel, if any, and by appellant . . . . If an appellant fails to timely sign a notice of appeal, the appeal shall be dismissed.

Rule 53(b) of the Utah Rules of Appellate Procedure echoes the corresponding Code provision, while also giving the appellant a means of amending a Notice of Appeal within fifteen days of the initial filing. The Court of Appeals of Utah has strictly interpreted the statute, dismissing an appeal that was not signed by an appellant. *J.R. v. State (In re State ex rel. D.E.)*, 147 P.3d 462 (2006). While the appeal was timely and signed by appellant's counsel, the appellant herself, the mother appealing the termination of her parental rights, did not sign the notice.

Similarly, South Dakota provides in South Dakota Codified Laws Annotated section 15-26A-4(1) that "[a] notice of appeal . . . shall be signed by the appellant and his or her attorney." The statute also notes that "the failure of the appellant and his or her attorney to sign a notice of appeal . . . deprives the Supreme Court of jurisdiction to decide the appeal." *Id.* In interpreting this statute, South Dakota's appellate court strictly interpreted the statute, finding that a notice of appeal without both the appellant's and attorney's signatures "deprived [the] Court of jurisdiction to consider the appeal of a judgment terminating parental rights . . . ." *In re People ex rel. S.D. Dep't of Soc. Servs.*, 799 N.W.2d 408, 412 (S.D. 2011).

Our neighboring state, North Carolina, provides in Rule 3.1(a) of the North Carolina Rules of Appellate Procedure as follows:

> Any party entitled by law to appeal from a trial court judgment or order rendered in a case involving termination of parental rights, and issues of juvenile dependency or juvenile abuse and/or neglect . . . may take appeal by filing notice of appeal . . . in the time and manner required. If the appellant is represented by counsel, both the trial counsel and appellant must sign the notice of appeal . . . .

---

argument regarding this issue or suggest that the appeal should be dismissed on this basis." This court considered the appeal on its merits. *Id.* at *10, n. 3.

[4]Laws 2008, c. 3, § 467, eff. Feb. 7, 2008.

*In re I.T.P-L.,* 670 S.E.2d 282, 285 (N.C. Ct. App. 2008) (noting notice of appeal by respondent from order terminating parental rights was "incomplete" when it lacked respondent's signature; dismissal was required of timely but improper appeal that violated requirement that parent sign notice of appeal"). *See In re L.B.,* 653 S.E.2d 240, 242, 244 (N.C. Ct. App. 2007).

In these cases, dealing with termination of parental rights, the courts strictly followed the language of the statutes and rules. This state's statute is just as unforgiving. Neither in the Tennessee Code Annotated nor in the Tennessee Rules of Appellate Procedure is there a safety valve or means of waiver for the requirement of the appellant's signature. Therefore, based on the language of the statute, the absence of Guardian's signature on the notice of appeal is a jurisdictional default, and the appeal must be dismissed.[5]

As the issue regarding the statute has not been previously ruled upon, in the event our holding is overturned on appeal, we note that even if the notice of appeal had been signed by Guardian in this case and the court had jurisdiction over the appeal and considered it on its merits, the evidence before us would not allow us to overrule the Circuit Court's ruling.

<u>Putative Father Entitled to Notice</u>

First, Guardian argues that Father should not be considered a putative father who is entitled to notice in such proceedings as those in issue here and therefore did not need to be named as a defendant to the proceedings under Tennessee Code Annotated section 36-1-113(d)(3)(B). Guardian asserts that Father falls under Tennessee Code Annotated section 36-1-117(c), as a father who has not filed a petition to establish paternity and had not established paternity of the child before the adoption proceeding. Further, Guardian contends that, under the statute, Father's parental rights have been terminated given the specific circumstances. The relevant statutory provision provides, in pertinent part,

> (c) The parental rights of the putative father of a child who has not filed a petition to establish paternity of the child or who has not established paternity of the child who is the subject of an adoption proceeding and who meets any of the following criteria shall be terminated by surrender, parental

---

[5] The statute at issue is procedural in nature. "Such statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result." *Kee v. Shelter Ins.,* 852 S.W.2d 226, 228 (Tenn. 1993) (citing *Saylors v. Riggsbee,* 544 S.W.2d 609, 610 (Tenn. 1976)).

consent, termination of parental rights . . . or by waiver of interest, before the court may enter an order of adoption concerning that child: . . .

Tenn. Code Ann. § 36-1-117(c). The only criteria that is of issue between the parties is Tennessee Code Annotated section 36-1-117(c)(2): "The biological father has been specifically identified to the petitioners or their attorney . . . by the child's biological mother in a sworn, written statement or by other information that the court determines to be credible and reliable[.]"

The burden of diligent inquiry into the identity of Father and other potential fathers rested on Guardians. The potential for more than one putative father does not automatically dispose of the requirement for actual notice of service. The Code specifically allows for that possibility in section 36-1-113(d)(3)(B), which provides that "any person or persons entitled to notice pursuant to § 36-1-117 shall be named as defendants in the petition to terminate parental rights or in the adoption petition and shall be served with a copy of the petition as provided by law." Tennessee Code Annotated section 36-1-117(m)(3) requires "[a]ny motion for an order for publication in these proceedings shall be accompanied by an affidavit of the petitioners or their legal counsel attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought." Courts have found that constructive service by publication should only be a means of last resort, especially in situations where the identity of the defendant is known. *Turner*, 473 S.W.3d at 273.

While Guardian argues that Mother's naming of Father in the Juvenile Court proceedings, including the misspelling of Father's name, does not rise to the level of the biological father being "specifically identified" per the statute, the trial court properly found that there was enough information present pertaining to the identity of Father to qualify. Even though Mother was unsure of the exact identity of the father of the Child, she specifically named Father in a previous court proceeding with Guardians present, as well as gave the city and state where he lived. Guardian argues that Mother only gave Father's name in the Juvenile Court proceeding after being threatened by the judge, and therefore, the naming should be disregarded. However, in the same proceeding, as well as in later proceedings, Mother repeatedly reassured the court of the truth of her statement. Mother also stated that Father could be the biological father of the Child to several people outside of court, including Guardian Martha L.R. Mother further testified at a later hearing that Guardians were aware of Father's travel to Greeneville after the Child's birth.

In the case at bar, both Bill H. and Father were named as potential putative fathers. Mother even stated a general residence of Father. Once the DNA test ruled out the possibility of Bill H. as the father of the Child, Guardians were left with one distinct possibility into which to inquire. The evidence supports the trial court findings that

Guardians were provided with enough information, both within and outside of court, to qualify Father as a putative father under Tennessee Code Annotated section 36-1-117(c). Guardians then made no further attempt to diligently inquire into Father's whereabouts so as to provide him with service and include him as a defendant in the adoption proceeding.

Lack of Personal Jurisdiction

Second, Guardian argues that the trial court erred in voiding the Final Judgment of Adoption as against Father for lack of personal jurisdiction. In order for a court to adjudicate a matter brought before it, that court must have both subject matter and personal jurisdiction over the parties involved. *Turner*, 473 S.W.3d at 269 (citations omitted). "A judgment rendered by a court lacking either personal or subject matter jurisdiction is void." *Id*. at 270 (citations omitted). In order to obtain personal jurisdiction over a defendant, the party must be notified by service of process, either directly or constructively when constitutionally allowable. *Id*. at 271 (citations omitted). The trial court found that because Father, undisputedly a resident of the State of Texas, was not properly served and made a defendant to the adoption, the court lacked personal jurisdiction over him. A court without personal jurisdiction of the defendant is "without power to proceed to an adjudication" binding on that defendant. *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 381 (1937).

Guardian submits that Father waived his right to the court obtaining personal jurisdiction over him, as allowed by *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). He also claims that the Petition for Adoption is a sufficient affidavit of the efforts made to determine the identity and location of Father and other potential fathers under Tennessee Code Annotated section 36-1-117(m)(1)-(3). We must agree with the trial court that these arguments lack merit.

In the order voiding the adoption as to Father, the trial court did not even address the need for Father to be served directly. Instead, the court found that Guardians did not make a Motion for Publication or a separate Affidavit detailing what they did to determine the identity and whereabouts of Father, which is an even lower bar than the requirement for personal service of process. Tennessee Code Annotated section 36-1-117(m)(3) specifically requires a motion for an order for publication with an accompanying affidavit, which, as even Guardian admits, was not made. Because service of process is not "a mere perfunctory act" but has "constitutional dimensions," a party who resorts to constructive service by publication must comply meticulously with the governing statutes. *Turner*, 473 S.W.3d at 274 (quoting *In re Z. J. S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *6 (Tenn. Ct. App. June 3, 2003) (citing *In re Baby Girl B.*, 224 Conn. 263, 618 A.2d 1, 17 (Conn. 1992)). By failing to follow the statutory requirements of constructive service by publication, Guardians failed to properly serve Father, therefore depriving the court of personal jurisdiction over Father.

## Exceptional Circumstances to Bar Relief

Third, Guardian asserts that exceptional circumstances exist that would bar Father's requested relief of voiding the Final Order of Adoption. Under the Restatement (Second) of Judgments section 66,

> Relief from a default judgment on the ground that the judgment is invalid will be denied if:
>
> (1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; **and**
>
> (2) Granting the relief would impair another person's substantial interest of reliance on the judgment.

(Emphasis added). The Restatement further explains that a manifestation of intent may come by either an express intention or from an "acceptance of benefits" of the judgment, "wherein the defaulting party conducts his own affairs on the basis of rights accorded him by the terms of the judgment." *Turner*, 473 S.W.3d at 281 (citing Restatement (Second) of Judgment § 66 cmt. b). Whether Father made an express intention to accept the final order is not in question. Guardian argues that Father had actual notice of the judgment since 2011 but failed to officially dispute the final order until the Motion to Set Aside the Adoption in 2015, which is a long enough period of time to be treated as manifesting an intention to accept the final order as valid. The trial court found that Father never manifested an intention to treat the judgment of adoption as valid and that exceptional circumstances do not exist to bar Father's requested relief.

While Father was first presented with the possibility of an adoption by Mother in 2011, it was not until the hearing in 2013 in Juvenile Court on Father's Amended Petition to Establish Paternity that Father definitively learned of the adoption. Both before and after this revelation, Father made documented efforts to oppose the Final Order of Adoption, with and without the assistance of counsel. These initial efforts included searching the Internet for information about the Child and filing motions to receive information about the Child and any proceedings involving her through the court. In contrast to Guardian's suggestion that Father sat idly by for almost four years, Father filed several motions with the court to obtain more access to any documents relating to the Child. While Father did not ultimately succeed on such motions until the hearing on the Motion to Set Aside Final Order of Adoption, his lack of success does not automatically mean acceptance of the judgment.

Despite Guardian addressing the injustice to both Guardian and the Child, the trial court properly found that since Father did not manifest an intention to treat the judgment as valid, Guardian's argument regarding exceptional circumstances lacks merit.

## Original Petition for Adoption

Lastly, Guardian argues that, should we uphold the trial court's ruling, he should be allowed to proceed with his original Petition for Adoption now that the Father is a party to the conflict. However, since Guardian did not raise this argument in the trial court, he may not raise it for the first time in this appeal.

## Testimony of Dr. Heather Gow

Next, Father contends that the testimony by Dr. Heather Gow as to the personality of the Child and her relationship with Guardian should not have been allowed, objecting as to the relevance of the testimony.

The standard for reviewing a trial court's judgment on the admission of evidence is based on an abuse of discretion by the trial judge. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). It occurs only when the trial court "applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

In this case, the trial court made a discretionary decision to allow Dr. Gow to testify over the objection of Father. Even with this evidence that Father argues is damaging, the trial court found in his favor, making the error (if any) harmless.

## Transfer of Custody To Father

Finally, Father argues that the trial court erred in not immediately transferring physical and legal custody of the Child after voiding the Final Order of Adoption. The trial court found that simply by voiding the Final Order of Adoption, custody did not automatically transfer to Father. Instead, the court looked to the last order from the Juvenile Court to return the custody of the Child to Guardian until further proceedings could determine the rights of Father.

Father argues that as the trial court has determined that he is the legal and

biological father of the Child,[6] he has a presumption of superior rights to custody because it has not been shown that doing so would cause substantial harm to the Child's welfare. Guardian counters that the right of a biological parent is not absolute, and that the court was correct to allow further inquiry regarding possible harm to the Child's welfare, considering the bond established with Guardian.

In our view, the decision of awarding custody of the Child to Father is an issue that is separate from the rest of the arguments put forth in this appeal. While parents do have a "fundamental right to the care, custody, and control of their children," *Stanley v. Illinois,* 405 U.S. 645 (1972), the trial court did not abuse its discretion by finding that a full hearing with a complete presentation of evidence by both parties is necessary to properly address the custody issue. Therefore, the judgment of the trial court to remand this decision back to the Juvenile Court was proper.

## V. CONCLUSION

The motion to dismiss the appeal is granted, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, James M.R.

_____
JOHN W. MCCLARTY, JUDGE

---

[6] DNA testing Report of Tri-Cities Diagnostic filed with court on Dec. 4, 2015.