IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 1, 2017

**IN RE PRINCE J.**

**Appeal from the Circuit Court for Hamilton County**
**No. 13A204      J. B. Bennett, Judge**

_____

**No. E2016-00479-COA-R3-PT**

_____

The mother of twins seeks to set aside the termination of her parental rights on the ground the judgment is void for lack of personal service. In August 2013, relatives who had legal custody of the children filed a "Petition for Termination of Parental Rights and Adoption." After two failed attempts to locate the mother for service of process, she was served by publication. In December 2013, the trial court entered an Order of Default terminating her parental rights, and the children were adopted shortly thereafter. The mother received actual notice of the termination of her parental rights and the adoption no later than April 2014, but she waited until October 2015 to file a Tenn. R. Civ. P. 60 motion to set aside the 2013 judgment. Following a hearing, the trial court ruled that the 2013 judgment was void for lack of personal service but that the mother was not entitled to relief from the judgment based on "exceptional circumstances." The mother appealed. We affirm the trial court's determination that the mother is not entitled to relief based on exceptional circumstances, they being that she had actual notice of the judgment eighteen months prior to seeking relief, which manifested an intention to treat the judgment as valid, and that granting relief would impair the children's and the adoptive parents' substantial interests of reliance on the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which THOMAS R. FRIERSON II and BRANDON O. GIBSON, JJ., joined.

Mindy M., Spencer, Virginia, Pro Se. [1]

Michael S. Jennings and William H. Vetterick, Chattanooga, Tennessee, for the appellees, James and Ila C.

_____

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

**OPINION**

Mindy M. ("Mother") gave birth to twin boys, Prince and Brooklyn, in Virginia in 2010.[2] When Mother was incarcerated in early 2012, a court in Virginia awarded custody of the twins to Mother's grandmother, Peola R. ("Grandmother"). In May 2012, custody was transferred to members of the extended family, James and Ila C. ("the Adoptive Parents") with the expectation that they may adopt the children.[3]

In June 2012, the Adoptive Parents and the children moved to Chattanooga, Tennessee. Thereafter, Grandmother used Skype to communicate with them on a regular basis. After Mother was released from jail, she was present on several occasions when Grandmother communicated with them through Skype; however, she chose not to be seen or to participate in any of the conversations. As Mother subsequently explained to the trial court, "I haven't Skyped with [the boys] but I have been around when my grandma has Skyped with [them] several times. And the reason why is because I didn't want no confusion or no disturbance going on during the Skyping."

On August 13, 2013, the Adoptive Parents filed a "Petition for Termination of Parental Rights and Adoption" in Hamilton County Circuit Court, contending that Mother's parental rights should be terminated under Tenn. Code Ann. § 36-1-102 (1)(A) for willful failure to visit and willful failure to support. As of the filing of the petition, Mother had only visited with the children on one occasion—a family reunion in August 2012. Moreover, Mother had not provided any support while the children were in the Adoptive Parents' custody.[4]

---

[2] The identity of the biological father is unknown.

[3] Grandmother signed an "Entrustment Agreement for Temporary Placement of Child." The entrustment agreement states in relevant part:

> The said party/parties of the first part hereby agree/agrees to surrender by the Entrustment Agreement and does/do hereby surrender all legal custody of and to the aforesaid party/parties of second part, hereby intending to effect a temporary separation from the said child and to give the party/parties of the second part[ies] full temporary custody over said child, with the right and duty of planning for his/her future, care, protection, and maintenance.

Grandmother then handwrote, "to develop nessecary [sic] rapport with said parties of the second part[ies] before final adoption."

[4] Mother does not dispute that at the time the Adoptive Parents filed the petition, her only contact with the children occurred in August 2012. Nor does Mother dispute the Adoptive Parents' contention that she did not provide monetary support.

The Adoptive Parents made several inquiries with relatives in their attempts to locate Mother for service of process. They also engaged a professional process server who attempted to serve Mother at her two last known addresses, one belonging to Mother's aunt and the other belonging to her former boyfriend. Neither Mother's aunt nor her former boyfriend knew where Mother now lived. The professional process server provided two affidavits that detailed his efforts to serve Mother, which were filed with the trial court.

After the first two summons were returned unserved, the Hamilton County Circuit Court Clerk issued a Publication Notice, although the Adoptive Parents had not filed a motion for publication with the court in accordance with Tenn. Code Ann. § 36-1-117. The publication ensued in the North Carolina area where Mother was last known to reside, and the notice ran weekly for four weeks in October 2013. On December 16, 2013, the trial court entered an Order of Default against Mother and terminated her parental rights to both children. The adoption of the children was finalized on December 30, 2013.

It is undisputed that Mother learned of the termination of her parental rights and the adoption of Prince and Brooklyn on or before April 2014; yet, she took no action to set aside the termination of her parental rights until October 7, 2015. In her Motion to Set Aside, Mother contended that the order terminating her parental rights was void for lack of personal service. In January 2016, the trial court denied Mother's Motion to Set Aside, ruling that (1) the substituted service by publication was valid; (2) Mother "waited too long under Rule 60 to challenge the Order as a voidable order;" and (3) the statute of repose located at Tenn. Code Ann. § 36-1-122(b)(1) and (2) prohibited the court from setting aside the judgment because Mother filed her motion to set aside more than a year after the judgment was entered.

Mother then filed a Motion to Alter or Amend, and the trial court entered an order requesting that the parties brief the following issues: (1) "The impact on [Mother's] motion…of the cases Turner v. Turner, 473 S.W.3d 257 (Tenn. 2015), In re Landon T.G. et al., No. E2015-01281-COA-R3 (Tenn. Ct. App. filed March 9, 2016) and section 66 of the Restatement (Second) of Judgments;" and (2) "Assuming, arguendo, the January 27, 2016 Order is void ab initio, do the repose statutes at issue, T.C.A. §§ 36-1-113(q) and 36-1-122(b) bar the motion from being successful?"

At the hearing on June 9, 2016, the parties agreed to treat the pending Motion to Alter or Amend as a Tenn. R. Civ. P. 60 motion, and Mother, Grandmother, and Adoptive Mother testified. In an order entered on September 21, 2016, the trial court ruled that the judgment terminating Mother's parental rights and granting the adoption was void ab initio for lack of personal service. Specifically, the trial court found that while the Adoptive Parents made diligent efforts to locate Mother, they failed to file a motion for publication of notice in accordance with Tenn. Code Ann. § 36-1-117. The

trial court ruled, however, that Mother was not entitled to relief because both prongs of the "exceptional circumstances" test had been met. In its order,[5] the trial court made the following findings of fact related to the determination that exceptional circumstances existed:

1. The Biological Mother has known since 2012 that [Adoptive Parents] have wanted to adopt Prince.
2. Prince's prior custodian, [Grandmother], completed and signed an entrustment agreement in Virginia on May 29, 2012 entrusting Prince…to the Adoptive Parents for the purpose of adoption.
3. Prince…[has] resided in the home of Adoptive Parents since June of 2012.
4. The Adoptive Parents filed for the adoption of Prince…in this Court on August 13, 2013.
5. The Biological Mother had actual knowledge of the completion of Prince's adoption by [Adoptive Parents] no later than April of 2014.
6. On October 7, 2015, prior counsel for the Biological Mother filed a Notice of Appearance and a Motion to Set Aside the underlying adoption decree….
7. By the time of this Court's June hearing, Prince had been physically residing in Chattanooga in the home of Adoptive Parents for approximately four years. In that four year period of time, the Biological Mother saw Prince twice, once at a family reunion in August 2012, and once at a McDonald's following a hearing in this case in November of 2015.
8. In the four years that Prince has been in the custody of the Adoptive Parents, the Biological Mother has paid no support of any type to the Adoptive Parents, and she has provided no Christmas gifts, birthday gifts or any type of support to or for Prince's benefit.
9. The Biological Mother testified that there was no "reaching out to the [Adoptive Parents]," despite knowing that Prince had been in their care since June of 2012.
10. There has been four years of a loving, nurturing, stable relationship between Prince and the Adoptive Parents, as well as four years of development and establishment of filial, as well as extended family relationships and socialization with the Adoptive Parents' family and community here in Chattanooga.

---

[5] For reasons unexplained by this record, the trial court had a separate case number for each child and entered two separate final judgments, one pertaining to Prince and the other pertaining to Brooklyn. Thereafter, Mother filed two separate appeals to this court. Therefore, we are filing separate but wholly consistent opinions in each of these appeals. The other appeal is *In Re Brooklyn J.*, No. E2016-00482-COA-R3-PT, 2017 WL ____, (Tenn. Ct. App. Dec. __, 2017).

11. Prince refers to the Adoptive Parents as mother and father, and he has used the [Adoptive Parents'] surname now for two and a half years.
12. The Adoptive Parents have foregone any efforts to pursue child support of any type from the Biological Mother.

Mother appealed the trial court's ruling.

## ANALYSIS

The parties raise several issues on appeal. We, however, have determined that the dispositive issue is whether exceptional circumstances justify denying Mother relief from the 2013 judgment terminating her parental rights.

A party is not entitled to relief from a void judgment if the following "exceptional circumstances" exist:

(1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and

(2) Granting the relief would impair another person's substantial interest of reliance on the judgment.

*Turner v. Turner*, 473 S.W.3d 257, 280 (Tenn. 2015) (quoting Restatement (Second) of Judgments § 66 (1982)).

"A judgment purporting to determine the rights of the parties, though lacking effect of its own force because of invalidity, can…be adopted as a consensual resolution of the parties' rights." *Id.* at 281. The court will deem the resolution as consensual if both parties manifest the intent to treat the judgment as valid. *Id.* A party against whom a judgment is rendered manifests intent to treat the judgment as valid when the party receives actual notice of the judgment and fails to express opposition. *Id.* at 282. In a parental termination case, the court considers how long the party waited to seek relief from the time he or she received notice of the judgment and whether the party, with actual knowledge of the judgment, attempted "to contact, visit, or provide financial support for the children." *Id.*

If the court determines that the party manifested an intention to treat the judgment as valid, then the trial court must determine whether granting relief "would impair another person's substantial interest of reliance on the judgment." *Id.* at 283 (quoting § 66). In parental termination cases, the court particularly considers the children's substantial "interests in status" and "interest[s] in repose from legal controversy." *Id.* (quoting § 66). Additionally, "the trial court may consider the relative equities between the parties," which would require the court to determine, among other relevant facts,

whether the parent seeking relief from the judgment attempted to contact the children or financially support the children. *Id.* at 284.

Here, the trial court found that after receiving actual notice of the judgment against her, Mother failed to oppose the judgment in any meaningful way for eighteen months. The evidence fully supports this finding. Mother conceded in her testimony that she learned about the judgment terminating her parental rights and granting the adoption in March or April 2014, and it is undisputed that she did not file a motion to set aside the judgment until October 2015. Mother also does not dispute that during those eighteen months, though she possessed the information necessary to contact the Adoptive Parents, she never attempted to contact, visit, or provide any financial support to Prince. Therefore, we agree with the trial court's determination that Mother manifested an intention to treat the judgment as valid.

After the trial court determined that Mother manifested an intention to treat the adoption as valid, the trial court determined that granting relief would impair the substantial reliance interests of Prince and the Adoptive Parents. We agree, noting that the facts which led to this conclusion were also uncontested. For example, it is undisputed that as of the time of the hearing, the Adoptive Parents had raised and nurtured Prince in their home for four years, and Prince had almost no contact with Mother during that time. Adoptive Mother testified that Prince referred to the Adoptive Parents as "mama" and "daddy" and used the Adoptive Parents' surname. The court concluded that Prince "has a significant interest in maintaining the existing family status and remaining in [the Adoptive Parents'] home."

The court also correctly concluded that the relative equities of the parties weighed heavily in favor of the Adoptive Parents and Prince. Mother conceded that Prince had been living in the home of the Adoptive Parents since June 2012 and that Mother had only visited Prince twice in a four-year period—once in August 2012 and once for approximately one hour in November 2015. Otherwise, Mother had no contact with Prince. She also conceded that in the four years Prince resided with the Adoptive Parents, she had provided no financial support to Prince in the form of money, Christmas gifts, birthday gifts, or otherwise, and the Adoptive Parents never sought any child support from Mother.

Adoptive Mother testified that since Prince came to live with the Adoptive Parents in June 2012, they treated Prince as if he were their own child. She testified that Prince attended a local elementary school, that he played baseball in a recreational league, and that he regularly attended church with the family. She also testified that Prince had developed a bond with extended family members who lived in the community. Based on Adoptive Mother's testimony concerning Prince's four years in the Adoptive Parents' care, the trial court concluded that Prince had "developed significant relationships with the Adoptive Parents, their extended family, their church and their other communities."

For the foregoing reasons, we affirm the trial court's determination that Mother is not entitled to the relief she seeks, that being to set aside the 2013 judgment terminating her parental rights.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Mindy M.[6]

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[6] On July 18, 2017, the Adoptive Parents filed a motion to dismiss for lack of subject matter jurisdiction. In light of the Supreme Court's recent decision in *In Re Bentley D.*, No. E2016-02299-SC-RDO-PT, 2017 WL 5623577, at *6 (Tenn. Nov. 22, 2017), the motion is denied.