FILED

02/03/2022

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2021

IN RE HAILEY C.

**Appeal from the Juvenile Court for Montgomery County**
**No. 2019-JV-2000   Wayne C. Shelton, Judge**

——————————————————————

**No. M2020-01487-COA-R3-JV**

——————————————————————

A father filed a petition in Tennessee to domesticate and modify a Kentucky child-custody decree.  The court later entered an agreed order granting the petition, which was not appealed.  Three months later, the mother filed a motion to set aside the final judgment on the grounds of fraud and lack of subject matter jurisdiction.  The court denied her Rule 60.02 motion and her subsequent Rule 59.04 motion.  Because the court did not rule on the mother's claims of fraud, we vacate the denial of the Rule 60.02 motion and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Anthony W. Kirby, Jr., Clarksville, Tennessee, for the appellant, Samantha L.

No brief filed on behalf of the appellee, Christopher C.

**OPINION**

**I.**

Christopher C. ("Father") and Samantha L. ("Mother") are the biological parents of one child, Hailey C.  Father and Mother were never married.  After the couple separated, Mother and Hailey moved in with the maternal grandmother in Kentucky.  Father moved to Tennessee.

On August 7, 2015, a Kentucky court awarded sole custody of the child to Mother. Father had parenting time every other weekend. He was also ordered to pay monthly child support.

In October 2019, Mother contacted Father to discuss a temporary change in their custody arrangement. According to Mother, she was commuting daily between Kentucky and Tennessee for her seasonal employment. Her schedule made caring for Hailey difficult. So she asked Father for help.

The parents met in Clarksville, Tennessee, on October 25, 2019. During that meeting, Mother signed a custodial power of attorney, an agreed order, and a modified permanent parenting plan. Mother maintains that she only signed the agreed order and parenting plan under duress. Father told her that Hailey could not be enrolled in school in Tennessee unless he had legal custody. And he refused to take custody without Mother's signature on all three documents. Mother did not have an attorney. Believing she had no other option, Mother acquiesced. Even so, Mother thought that this new arrangement was temporary.

Unbeknownst to Mother, three days later, Father filed a verified petition in Tennessee, seeking to domesticate and modify the Kentucky custody decree. Mother maintains that she never saw a copy of the petition before or after it was filed. The appellate record does not contain proof of service. *See* TENN. R. CIV. P. 4.03.

In his petition, Father swore that he, Hailey, and Mother were residents of Tennessee and had "so resided for more than six months preceding the filing of this petition." And while the Kentucky court had made an initial custody determination, none of the parties were still living in Kentucky. Father also alleged that a material change in circumstances had occurred such that the current custody arrangement should be modified. He asked the court to name him primary residential parent.

On December 6, 2019, the Tennessee court entered the agreed order, which Mother had signed on October 25, 2019. The agreed order granted Father's petition to domesticate and to modify the Kentucky custody decree. The agreed order recited that Tennessee had jurisdiction over the minor child; a material change in circumstances had occurred; and modification of the parenting schedule, as detailed in the attached permanent parenting plan, was in the child's best interest.

On March 13, 2020, Mother filed a verified motion to set aside the agreed order under Tennessee Rule of Civil Procedure 60.02. Mother argued that the agreed order should be set aside on grounds of fraud and lack of subject matter jurisdiction. She claimed that Father had falsely represented the parties' residency in the petition. Contrary to the allegations in the petition, Mother swore that she and Hailey had lived in Kentucky until late October 2019. And Mother had only lived in Tennessee temporarily. So the court

2

lacked subject matter jurisdiction to modify the Kentucky custody decree under the true facts. She also claimed that she had signed the agreed order and permanent parenting plan under duress. And she had never been served with the petition.

The court denied the Rule 60.02 motion. The court reasoned that the Kentucky custody decree "was domesticated in Tennessee therefor Tennessee had subject matter jurisdiction to enter the Agreed Order and Parenting Plan." The court did not address Mother's fraud argument.

Mother tried again. In a motion to alter or amend, Mother argued that the court's denial of her previous motion was based on a clear error of law. *See* TENN. R. CIV. P. 59.04. The court failed to consider whether it had subject matter jurisdiction to modify the Kentucky custody decree under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *See* Tenn. Code Ann. § 36-6-218 (2021). And she submitted additional evidence, in the form of school attendance records, showing that Hailey had attended school in Kentucky until shortly before the petition was filed. She also reiterated her claim that the agreed order was procured through fraud.

The court denied this motion as well. The court specifically rejected Mother's UCCJEA arguments. It found that Mother, by signing the agreed order, had waived any objections to subject matter jurisdiction. Again, the court did not address Mother's fraud argument.

## II.

A litigant may challenge the denial of a Rule 60.02 motion by filing a motion to alter or amend under Rule 59.04. *Third Nat'l Bank of Nashville v. Estes*, No. 85-142-II, 1986 WL 3155, at *2 (Tenn. Ct. App. Mar. 12, 1986) (citing *Inryco, Inc. v. Metro. Eng'g Co.*, 708 F.2d 1225, 1232 (7th Cir. 1983)). On appeal, we review only the trial court's ruling on the Rule 60.02 motion. *Id.* at *3; *see also Inryco, Inc.*, 708 F.2d at 1232. The correctness of the underlying judgment is not subject to review. *Third Nat'l Bank of Nashville*, 1986 WL at *3; *see also Inryco, Inc.*, 708 F.2d at 1232.

We review a trial court's ruling on a Rule 60.02 motion for an abuse of discretion. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). A court abuses its discretion when it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). But whether subject matter jurisdiction exists is a question of law, which we review de novo. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *see also Turner v. Turner*, 473 S.W.3d 257, 269 (Tenn. 2015) (holding that the standard of review on a Rule 60.02(3) motion to set aside a judgment as void is de novo).

3

The court initially ruled that it had subject matter jurisdiction to modify the Kentucky decree because it had been domesticated. A properly domesticated foreign judgment is generally enforceable in Tennessee. *See Frazier v. Frazier*, 72 S.W.3d 333, 335 (Tenn. Ct. App. 2001); *see also* Tenn. Code Ann. §§ 36-6-229 to -232 (2021) (governing the procedures for registration and enforcement of a foreign custody decree). But domestication of a foreign custody decree does not authorize the court to modify the decree. Tenn. Code Ann. § 36-6-230 ("A court of this state shall recognize and enforce, but may not modify, except in accordance with this part, a registered child-custody determination of a court of another state."); *Kelso v. Decker*, 262 S.W.3d 307, 313 (Tenn. Ct. App. 2008) (affirming the registration of a foreign custody decree but vacating its modification for lack of subject matter jurisdiction).

The court then decided that Mother had waived any objection to subject matter jurisdiction by signing the agreed order. But "[s]ubject matter jurisdiction . . . cannot be waived." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). Nor can a litigant, by conduct or agreement, confer subject matter jurisdiction on the court. *In re Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

"Subject matter jurisdiction refers to the power of a court to adjudicate the particular category or type of case brought before it." *Turner*, 473 S.W.3d at 269. A court derives subject matter jurisdiction solely from our Constitution or legislative acts. *Northland Ins. Co.*, 33 S.W.3d at 729. The UCCJEA, as codified in Tennessee, governs the power of our courts to modify another state's child-custody determination. Tenn. Code Ann. § 36-6-218. Except in emergencies,[1] a Tennessee court may not modify another state's child-custody determination unless the requirements in the statute are met. *Id.*

As a first step, the Tennessee court must have jurisdiction to make an "initial determination" about the child under Tennessee Code Annotated § 36-6-216(a)(1) or (2). *Id.* Subsection (a)(1) gives the child's home state authority to render an initial child-custody decision. *Id.* § 36-6-216(a)(1) (2021). A child's home state is the "state in which a child lived with a parent . . . for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 36-6-205(7) (2021). The record reflects that Tennessee is Hailey's home state. Father swore in the petition that she resided with him in Tennessee and had done so for six months or more before the petition was filed.

Next, the court must decide whether one of two additional circumstances are present. *Id.* § 36-6-218(1)-(2). The first circumstance depends on affirmative action by

---

[1] We are not presented with an emergency here. *See* Tenn. Code Ann. § 36-6-219 (2021) (providing courts with temporary emergency jurisdiction under certain conditions).

4

the foreign court. The foreign court may decide that it no longer has exclusive, continuing jurisdiction or that Tennessee would be a more convenient forum. *Id.* § 36-6-218(1). This record contains no such ruling from the Kentucky court. *See id.* § 36-6-217 cmt. 1 (2021) ("A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction.").

The second circumstance focuses on where the parties "presently reside." *Id.* § 36-6-218(2). A Tennessee court may have jurisdiction to modify another state's custody decree if the Tennessee court, or another court, determines "that the child, the child's parents, and any person acting as a parent do not presently reside in the other state." *Id.* Residency is not a technical inquiry. *See id.* § 36-6-217 cmt. 2. The court's task is to simply decide where the relevant individuals actually live. *See id.*; *Staats v. McKinnon*, 206 S.W.3d 532, 548 (Tenn. Ct. App. 2006). According to the petition, none of the relevant individuals lived in Kentucky when the petition was filed. So this circumstance appeared to have been met.

Rule 60.02 permits a trial court to set aside a void judgment. TENN. R. CIV. P. 60.02(3). A judgment rendered without subject matter jurisdiction is void. *Turner*, 473 S.W.3d at 270. But once the judgment becomes final, the court's review is limited. *Id.* at 275. "[W]hen determining whether a judgment is void, a court must confine its review to the record of the proceeding from which the judgment emanated." *Id.* The alleged defect must be "apparent from the face of the judgment or the record of the proceeding." *Id.* at 271. Otherwise, "the judgment is merely voidable, not void." *Id.*

The Tennessee court had subject matter jurisdiction to modify the Kentucky decree based on the verified allegations in the petition.[2] *See* Tenn. Code Ann. § 36-6-218. Mother contended that these allegations were false. And she submitted contrary evidence with her post-judgment motions. But she cannot "attack the validity of the judgment via Rule 60.02(3) by offering evidence in addition to that in the record." *Turner*, 473 S.W.3d at 275. So the court did not err in refusing to set aside the agreed order for lack of subject matter jurisdiction.

Even so, the court did not address Mother's argument that the agreed order should be set aside for fraud. *See* TENN. R. CIV. P. 60.02(2). Under Rule 60.02(2), a court may set aside a final judgment for "fraud . . . , misrepresentation, or other misconduct of an adverse party." *Id.* Rule 60 motions based on fraud must be filed within a reasonable time, no more than a year after the judgment was entered. *Id.* Mother's motion, filed three months after the agreed order became final, was timely.

---

[2] "Once a court determines that it has subject matter jurisdiction under [the UCCJEA], it must then . . . determine whether it may or must decline to exercise its modification jurisdiction on one of the three grounds specified in the UCCJEA." *Staats*, 206 S.W.3d at 548. Based on this record, none of these three grounds are applicable. *See* Tenn. Code Ann. §§ 36-6-221 to -223 (2021).

To establish fraud, Mother must present clear and convincing evidence that Father intentionally acted "to keep [her] and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to [Mother's] rights." *Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (citation omitted). The fraudulent conduct "must be of a type that prevented the other party from fully and fairly presenting its case." *Lee v. Lee*, No. 29, 1990 WL 90942, at *2 (Tenn. Ct. App. July 3, 1990) (citation omitted); *accord* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2860, Westlaw (database updated Apr. 2021). "[W]ithholding evidence and the knowing use of perjured testimony" are prime examples of the type of misconduct warranting relief under Rule 60.02(2). *Duncan*, 789 S.W.2d at 563.

Mother claimed Father committed multiple fraudulent acts. He coerced her into signing the agreed order and modified parenting plan against her will. Then he filed false allegations in the Tennessee court. And he concealed his misconduct by failing to serve her with a copy of the petition. So she claimed she was unable to discover his fraud until after the agreed order was final.

The court did not address Mother's alternative argument when it denied the Rule 60 motion. So we vacate the denial of the Rule 60 motion and remand for the court to determine whether the agreed order should be set aside for fraud.[3] While Mother's additional proof of residency cannot be used to establish that the judgment was void, it may be considered for other purposes, such as whether Father procured the entry of the agreed order through fraudulent conduct.

## III.

Although the court applied the wrong legal standard, we conclude that the final judgment was not void for lack of subject matter jurisdiction. But because the court failed to consider whether the judgment should be set aside for fraud, we vacate the denial of the Rule 60.02 motion and remand for further proceedings consistent with this opinion.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

[3] Mother also sought relief under Rule 60.02's catch-all provision. *See* TENN. R. CIV. P. 60.02(5). Despite its broad language, relief under the catch-all provision is limited to the "most compelling, unique, exceptional, and extraordinary circumstances." *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 512 (Tenn. Ct. App. 2005). Mother did not show that she was entitled to relief on this ground.