IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 2, 2025



**IN RE ETHAN D.**

**Appeal from the Chancery Court for Anderson County**
**No. 21CH3631      James W. Brooks, Jr., Chancellor**

_____

**No. E2024-01322-COA-R3-PT**

_____

In proceedings to terminate his parental rights, a father who lived out of state claimed that he was not served with process. The case went to trial based upon substitute service, and the father's parental rights were terminated. Because we conclude that the father was not properly served, we vacate the judgment terminating his parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Daniel Lord Taylor and John N. Bean, Cordova, Tennessee, for the appellant, Yan D.

Brian E. Nichols, Loudon, Tennessee, for the appellees, John B. and Nicole H.

**OPINION**

**I.**

John B. ("Stepfather") wanted to adopt the biological child of his wife, Nicole H. ("Mother"). So he filed a "Petition for Step-Parent Adoption and Termination of Parental Rights" against the child's biological father, Yan D. ("Father"). *See* Tenn. Code Ann. § 36-1-113(b)(1) (2021) (granting a prospective adoptive parent standing to file a petition to terminate parental rights). Mother joined in the petition to give consent to the adoption. *See id.* § 36-1-117(f) (2021) (providing that "the co-signing of the petition by the child's parent who is the spouse of the petitioner shall not affect the existing parent/child legal

relationship between that parent and the parent's child who is the subject of the adoption petition by the stepparent of the child").

Father, representing himself, responded with repeated motions to dismiss "by special appearance." He complained that Stepfather and Mother "never served [him] with a complaint and summons as required by law for a new case." With some of the motions, he exhibited emails from counsel for Stepfather and Mother acknowledging the lack of service.

At first, Stepfather and Mother denied responsibility for filing a return of service. Their "counsel had followed procedure" by sending process to the Tennessee Secretary of State for service on Father, "which ultimately placed the responsibility . . . on the Secretary of State." *See id.* §§ 20-2-214(a), -215(a) (2021) (providing for service of process on nonresidents through the Secretary of State). And, in their view, Father was "attempt[ing] to avoid service by demanding that he must be personally served" and by "refus[ing] to confirm his physical address."

For his part, Father denied avoiding service and asserted that Stepfather and Mother, not the Tennessee Secretary of State, were responsible for serving him. He also noted that he had included his mailing address on each of the documents filed "by special appearance."

As the second anniversary of the case approached, Stepfather and Mother moved for a default despite Father's multiple motions to dismiss. They claimed that Father finally had been served through the Secretary of State. Father responded by denying that he had been served and renewing his request that the case be dismissed.

Later, Stepfather and Mother acknowledged that Father had not been served. In an affidavit filed in support of a motion for service by publication, their attorney explained that they had reported service based upon notification that certified mail sent to Father by the Secretary of State was returned as "unclaimed." However, "[u]pon further research of the Statute, and the recent revisions of Tennessee Rules of Civil Procedure," their attorney conceded that unclaimed mail was no longer sufficient to prove refusal of service and, thus, actual and valid service of process.[1]

---

[1] In 2016, Tennessee Rules of Civil Procedure 4.04 and 4.05 "were amended . . . by deleting a former sentence in each rule which stated, in summary, that the United States Postal Service's notation on a return receipt that a properly addressed registered or certified letter was 'unclaimed,' or other similar notation, was sufficient evidence of the defendant's refusal to accept delivery." TENN. R. CIV. P. 4.05 advisory comm'n cmt. to 2019 revision; *see also id.* advisory comm'n cmt. to 2016 revision. This provision was deleted "because the Postal Service's notation that a registered or certified letter is 'unclaimed' is not sufficient, by itself, to prove that service was 'refused.'" TENN. R. CIV. P. 4.04 advisory comm'n cmt. to 2016 revision; TENN. R. CIV. P. 4.05 advisory comm'n cmt. to 2016 revision.

Still, they blamed Father for the lack of service. Father obviously "ha[d] knowledge that this case exist[ed], and [was] aware of what ha[d] been filed" based on his responses contesting jurisdiction. Counsel for Stepfather and Mother had "contacted [Father], via electronic mail, to try to coordinate service, which was unsuccessful." And Father "had sufficient and prior knowledge that service was being handled by the Secretary of State of Tennessee, via certified mail," yet the mail was returned "unclaimed." The failure to claim the mail, they argued, was further evidence that Father "intentionally avoided service."

Thirty-one months after filing the termination petition, Stepfather and Mother again moved for a default judgment, informing the court that "service was attempted and obtained." This time, they had used "a private process serving agency in Florida." The court found that Father had been served via "substitute service on [another] adult in the residence" where Father lived. And it concluded that substitute service was appropriate because Father "ha[d] exerted tremendous efforts to avoid service of process." As support for this determination, the court explained that Father knew about the case "because he was filing numerous motions to dismiss and motion [sic] for a continuance and . . . these special appearances pleadings . . . well before he was served."

A short time later, as the date for the trial approached, Father, still complaining that he had not been served, moved to stay the proceedings or, in the alternative, "to attend by Zoom or by Phone." He filed two notes from medical professionals explaining that he was "in the process of recovering from" open-heart surgery and a post-operative leg infection. According to his physician, Father was unable "to drive long distances until he [was] medically stable." The physician recommended "that any legal processes be undertaken telephonically so as not to put [Father's] health in peril." But the court "d[id] not accept [Father's] inability to be present for Court." It "d[id] not find that [physician's] letter to be convincing and [was] not delaying this proceeding any further, as [Father] ha[d] elected to represent himself, ha[d] no one to blame but himself, as he was served and aware of this proceeding."

The trial proceeded in Father's absence with Mother serving as the only witness. At the conclusion of the proof, the court terminated Father's parental rights. It concluded that there was clear and convincing evidence of three statutory grounds for termination and that termination of Father's parental rights was in the child's best interest.[2]

---

[2] The "Petition for Step-Parent Adoption and Termination of Parental Rights" alleged only two statutory grounds for terminating Father's parental rights. On appeal, Stepfather and Mother acknowledge that one of the grounds for terminating parental rights was inapplicable, but not on the basis that the ground was not alleged. *See In re Tristyn K.*, No. E2010-00109-COA-R3-PT, 2010 WL 2867179, at *5 (Tenn. Ct. App. July 22, 2010) (recognizing that, absent evidence showing that a parent was properly apprised of additional grounds, "[a] trial court cannot terminate parental rights based on a ground that is not alleged in the complaint").

## II.

### A.

Father raises six issues on appeal. His first issue, whether the trial court erred in finding that substitute service was effective service of process, is dispositive. Tennessee courts follow the "well-established principle that a court must have jurisdiction over a defendant before it can enter a valid judgment." *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 566 (Tenn. 2023) (citing *Kulko v. Superior Ct. of California In & For City & Cnty. of San Francisco*, 436 U.S. 84, 91 (1978)). The Due Process Clause of the United States Constitution limits a state court's power to exercise jurisdiction over a nonresident defendant. *Id.* at 566-67 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011) (recognizing that "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power[] and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause"). "A court obtains personal jurisdiction over a party defendant by service of process." *Turner v. Turner*, 473 S.W.3d 257, 271 (Tenn. 2015). Thus, service is not "a mere perfunctory act"—it has "constitutional dimensions." *Id.* at 274 (quoting *In re Z.J.S.,* No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *6 (Tenn. Ct. App. June 3, 2003)).

Where the termination proceeding is filed in circuit or, as here, chancery court, service of process must be "made pursuant to the Tennessee Rules of Civil Procedure and the statutes governing substituted service." Tenn. Code Ann. §§ 36-1-117(m)(1), -113(e). For defendants outside the state, such as Father, service may be effected "by any form of service authorized for service within this state" under Tennessee Rule of Civil Procedure 4.04. TENN. R. CIV. P. 4.05(1)(a). Under Rule 4.04(1), "the preferred method of service upon an individual . . . is clearly by delivery of the summons and complaint to the defendant personally."[3] *Hall v. Haynes*, 319 S.W.3d 564, 572 (Tenn. 2010) (quoting ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 2-3(d), at 2-26 (2d ed. 2004)). But the Rule also permits what is known as substituted service. *See Service*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "substituted service" as "[a]ny method of service allowed by law in place of personal service"). Specifically, an individual may be served by leaving copies of the summons and the complaint "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing [in the house or abode]" but only if the defendant "evades or attempts to evade service." TENN. R. CIV. P. 4.04(1).

---

[3] Rule 4.04(1) excludes individuals who are either an "unmarried infant" or "incompetent." *See* TENN. R. CIV. P. 4.04(1), (2).

The serving party carries the burden of proving that a defendant attempted to evade service. *Novack v. Fowler*, No. W2011-01371-COA-R9-CV, 2012 WL 403881, at *6 (Tenn. Ct. App. Feb. 9, 2012). "Evade" in this context means "to escape or avoid by cleverness or deceit." *Stanley v. Mingle*, No. 01-A-019007CV00253, 1991 WL 53423, at *3 (Tenn. Ct. App. Apr. 12, 1991) (quoting *American Heritage Dictionary,* 453 (New College ed. 1979)). Generally, to support a finding that a defendant was evading service, "the failure to serve . . . must be attributable to the defendant's actions." *Novack*, 2012 WL 403881, at *8.

Here, the trial court found that Father was attempting to evade service based on his knowledge of the ongoing case, as evidenced by his numerous motions contesting jurisdiction and service "by special appearance." But our courts "have repeatedly held that actual notice of the lawsuit is not a substitute for service of process where it is required by the Rules of Civil Procedure." *Krogman v. Goodall*, No. M2016-01292-COA-R3-CV, 2017 WL 3769380, at *5 (Tenn. Ct. App. Aug. 29, 2017); *Hall*, 319 S.W.3d at 572. Father repeatedly raised the issue of insufficient service in his motions to dismiss. *See* Tenn. R. Civ. P. 12.02(5). He even went so far as to make multiple "special appearances" to contest personal jurisdiction. *See Landers v. Jones*, 872 S.W.2d 674, 676 (Tenn. 1994) (noting the "modern legal trend away from the technical requirement that a defendant must enter a special appearance to contest personal jurisdiction"); 6 C.J.S. Appearances § 6 (2025) (explaining that the purpose of making a special appearance "is to question the jurisdiction of the court").

Still, Stepfather and Mother contend that the record supports a finding that Father "was actively evading or attempting to evade service." In addition to Father's "various filings," they highlight their attorney's affidavit, which recounted the unsuccessful efforts to coordinate service of process with Father. It explained that the "United States Postal Office [had] attempted service through certified mail to [Father's] residence, to no avail."[4] And it asserted that Father "was aware of the service attempts" that were ultimately unsuccessful; Father was just being uncooperative.

These facts, either alone or in combination, are insufficient to find that Father was attempting to evade service. Courts may not infer or presume that a defendant has attempted to evade service based solely on failed prior attempts at service. *See Stanley*, 1991 WL 53423, at *3. Even a defendant's "actual knowledge of attempted service" does not necessarily provide evidence of evasion. *See Turner*, 473 S.W.3d at 271 (Tenn. 2015) (quoting *Ramsay v. Custer*, 387 S.W.3d 566, 568 (Tenn. Ct. App. 2012)). Nor does a lack

---

[4] The record includes no returns of service. *See* Tenn. R. Civ. P. 4.03(1) (requiring "[t]he person serving the summons" to "promptly make proof of service to the court[,] . . . identify the person served[,] and . . . describe the manner of service").

of success in coordinating service or "confirming" an address, as argued here, constitute an attempt "to escape or avoid [service] by cleverness or deceit." *Krogman*, 2017 WL 3769380, at *6; *Novack*, 2012 WL 403881, at *8. We note that, for months, Father repeatedly informed Stepfather and Mother that he had not yet been served and provided his address.

Stepfather and Mother failed to meet their burden of showing that Father was attempting to evade service of process. So service on an adult in Father's residence did not constitute effective service of process on Father. And we find it appropriate to vacate the judgment terminating Father's parental rights. *See In re A.W.*, No. M2020-00892-COA-R3-PT, 2021 WL 4075102, at *4 (Tenn. Ct. App. Sept. 8, 2021) (vacating judgment terminating parental rights where "father was not served under the Tennessee Rules of Civil Procedure or the statutes governing substituted service").

B.

Father requests an award of attorney's fees incurred on appeal under Tennessee Code Annotated § 36-5-103(c). Under that statute, the court may award reasonable attorney's fees to a prevailing party in several domestic relations contexts, including "in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing." Tenn. Code Ann. § 36-5-103(c) (2021). Father acknowledges that, over a decade ago, this Court determined that a termination of parental rights case could not be "accurately . . . characterized as a custody case under Tenn. Code Ann. § 36-5-103(c)." *In re Nathaniel C.T.*, 447 S.W.3d 244, 247 (Tenn. Ct. App. 2014). But he suggests our prior determination "should be revisited" in light of an earlier decision holding that "a termination of parental rights proceeding constitutes a 'custody proceeding' within the meaning of [the Uniform Child Custody Jurisdiction and Enforcement Act]." *In re Adoption of Copeland*, 43 S.W.3d 483, 487 (Tenn. Ct. App. 2000) (citing Tenn. Code Ann. § 36-6-202(3) (1996)).

Although Tennessee Code Annotated § 36-5-103(c) was amended in 2018 to, among other things, "provide for an award of attorney fees to a 'prevailing party' instead of a 'plaintiff spouse' in specified family law proceedings," we decline the invitation to revisit the application of the statute to parental termination cases. *Colley v. Colley*, 715 S.W.3d 293, 308 (Tenn. 2025); *see also* 2018 Tenn. Pub. Acts 1186. Before the amendment, we concluded that the statute was not applicable to termination cases. *In re Makenzie L.*, No. M2014-01081-COA-R3-PT, 2015 WL 3793788, at *21 (Tenn. Ct. App. June 17, 2015); *Bryant v. Bryant*, No. 01A01-9806-CV-00337, 1999 WL 43282, at *6 (Tenn. Ct. App. Feb. 1, 1999). And we reached the same conclusion after the amendment. *In re Isaiah F.*, No. M2023-00660-COA-R3-PT, 2024 WL 1765247, at *6 (Tenn. Ct. App. Apr. 24, 2024). We see no reason to depart from our prior precedent. As the statute indicates, fees may be awarded "in any suit or action concerning the adjudication of the custody or change of custody of any children, *both upon the original divorce hearing and*

6

*at any subsequent hearing*." Tenn. Code Ann. § 36-5-103(c) (emphasis added). This language limits the type of custody case in which attorney's fees may be awarded to cases in which a permanent parenting plan is adopted or where a modification is sought that might change the primary residential parent or parenting time. So, we deny Father's request for attorney's fees under the statute, even though termination of parental rights "sever[s] forever all legal rights and obligations of the parent . . . of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent." *Id.* § 36-1-113(*l*)(1).

## III.

Because the petitioners did not obtain effective service of process, we vacate the judgment terminating Father's parental rights. We deny Father's request for an award of attorney's fees incurred on appeal. This case is remanded to the trial court for further proceedings consistent with this opinion.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

7